**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA — FRESNO DIVISION**

*[handwritten: 12511 Jacksonville Ave Bakersfield CA 93312]*

**N.M. ,**
**Plaintiff, PRO SE,**

v.

**State of California; Gavin Newsom (official capacity); Rob Bonta (official capacity); Shirley N. Weber (official capacity); Mike McGuire (official capacity); Robert Rivas (official capacity); and DOES 1–10,**
Defendants.

**Case No.** *[handwritten: 1:25-CV-01478-JLT-EPG]*

*[stamp: FILED NOV 03 2025 CLERK U.S. DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA BY ___ DEPUTY CLERK]*

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; PERMANENT FORFEITURE OF ELEVENTH AMENDMENT IMMUNITY; VOID AB INITIO; EX PARTE YOUNG PROPHYLAXIS; DECLARATORY ALLOCATION; DOJ REFERRAL; RULE 20 NOTICE**

**Notice re Pseudonymity & Sealed Identity. Plaintiff proceeds publicly as "N.M." pursuant to a concurrently filed Motion to Proceed Pseudonymously and to Seal Identity Materials under E.D. Cal. L.R. 141 and Fed. R. Civ. P. 5.2. Plaintiff's true name and complete contact information are set forth in a Sealed Identity Declaration and Sealed Service List lodged under L.R. 141. Defendants will receive those sealed materials via U.S. Marshals Service. Plaintiff respectfully requests that all parties and the Clerk refrain from disclosing Plaintiff's true name on the public docket pending further order.**

Plaintiff alleges:

**NOTICE TO DEFENDANTS (This Pleading Mirrors Your Words and Acts)**

1.       This pleading mirrors your own official statements and conduct: (a) the Governor's Aug. 14, 2025 announcement and official social-media post; (b) the Governor's Aug. 21, 2025 press remarks at the signing; (c) California Assembly floor statements on or about Aug. 2025; and (d) the Governor's Sept. 20, 2025 signing of SB 627 ("No Secret Police Act") and related official materials. Exhibits A–D attach/verbatim these items and the government-hosted pages noticed under FRE 201.

2.       Under FRE 801(d)(2)(A), (B),(C) ,(D), the statements and acts in Exhibits A–D are party, adoptive, and agent admissions of California qua California. The Attorney General's non-repudiation is an adoptive admission. New Hampshire v.

*[handwritten signature]*   *[handwritten: 11-3-2025]*

Maine, 532 U.S. 742 (2001), estops litigation pivot to "just rhetoric."

3.    You are on spoliation notice. Preserve all records (emails, drafts, messaging, videos, transcripts, talking points, legislative analyses, bill drafts, press prep, internal legal memoranda) relating to the August–September 2025 measures, the "ALL 50 States" ballot branding, and SB 627. Failure to preserve ESI risks sanctions under Fed. R. Civ. P. 37(e).

4.    This action seeks structural relief commensurate with your conduct, including PERMANENT forfeiture of Eleventh Amendment immunity in the courts of the United States; void ab initio treatment for ultra vires measures; Ex parte Young prophylaxis; declaratory allocation of constitutional forums and powers; and ancillary DOJ referral.

——

## PREAMBLE — ADOPTIVE ADMISSION & JUDICIAL ESTOPPEL (BREYER MAXIM)

5.    This case is not built upon novel theories, creative pleading, or speculative doctrines. It is built upon the State of California's own words and actions.

6.    On September 2, 2025, California's Attorney General Bonta on his official X (@AGRobBonta) account publicly amplified and endorsed a Northern District of California decision by quoting Judge Charles R. Breyer: **"Whether they believed that some constitutional or other exception applied does not matter; ignorance of the law is no excuse."** California touted that maxim as proof of its victory against the President of the United States.

7.    Fifteen days later, on September 17, 2025, at 4:08 PM, Attorney General Bonta again  invoked foundational constitutional principles on the same official channe(@AGRobBonta on X)l: **"Separation of Powers. The Rule of Law. Our Constitution is the foundation of our nation. We can not—and will not—allow anyone to trample on it."** That statement, made in his capacity as California's chief legal officer, affirms that the State itself regards separation of powers as inviolable.

8.    Those public amplifications constitute adoptive admissions by a party-opponent under FRE 801(d)(2)(B). Having selected and broadcast those principles as the State's own legal position, Defendants are bound by them.

9.    Judicial estoppel also applies. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (preventing a party from prevailing on one position, then taking the opposite for tactical advantage). California cannot celebrate the Breyer maxim when it aids the State and then disclaim it when it binds the State.

10.    By their adoption of the Breyer maxim and separation-of-powers refrain, Defendants have foreclosed defenses that this case might otherwise invite: (a) ignorance or mistake about constitutional allocations; (b) characterization as mere rhetoric; or (c) invocation of emergency or "imminent danger" to excuse ultra vires action. Defendants' own maxim is that "ignorance of the law is no excuse."

11.    Against that backdrop, the record reflects official, post-act admissions and state action that cross multiple constitutional tripwires:

(a) **Elections Clause—Art. I, § 4 (division of authority).** Each State controls its own congressional election rules; **only Congress** may impose national overrides. Rucho v. Common Cause, 139 S. Ct. 2484, 2506–07 (2019). California's Governor declared, **"we're giving voters a way to ... nullify congressional gains in Texas or any state"** (Ex. A, Aug. 14, 2025), and an Assembly leader stated, **"We must all continue to press Congress ... But until that occurs ... this measure."** (Ex. C, Aug. 2025). These are assertions to exercise Congress's dormant override and to supervise sister States' § 4 prerogatives.

(b) **Supreme Court's Exclusive Original Jurisdiction—Art. III, § 2; 28 U.S.C. § 1251(a).** The Governor framed Texas's redistricting as an injury to California: **"They shot the first bullet. They took an action in Texas and we're responding to it."** (Ex. B, Aug. 21, 2025). That is an interstate controversy reserved to the Supreme Court. California did not seek leave there, but instead self-helped.

(c) **War Clause/Imminent Danger Framing—Art. I, § 10, cl. 3.** The "shot the first bullet" formulation is the vocabulary of "imminent danger that will not admit of delay." No State may invoke that framing against a sister State's lawful § 4 act while bypassing the Supreme Court's original forum.

12.    **Independently of preemption or intergovernmental-immunity, SB 627 invades Congress's capstone power** to "make all Laws which shall be necessary and proper for carrying into Execution ... all other Powers vested ... in any Department or Officer of the United States." U.S. Const. art. I, § 8, cl. 18. What the Constitution **delegates** to the United States is **not reserved** to the States. U.S. Const. amend. X. Because ICE sits within a federal Department and its agents are federal officers, only **Congress** may legislate the manner of their official duties and attire; California has **no concurrent** lawmaking authority in that field at all. SB 627's own official signing release confirms the target: it **"bans federal and local law enforcement, including ICE, from wearing ski masks and similar extreme masks,"** and **"requires officers to display their faces ... when ... conducting raids or engaging in other official duties."** (Ex. D, Sept. 20, 2025).

13.    Additional tripwires include:

(d) **Equal Footing, Comity, and Full Faith & Credit.** Treating a sister State's internal § 4 choices as an injury to California repudiates horizontal comity and the equal-footing doctrine that undergird Hans v. Louisiana, 134 U.S. 1 (1890); Alden v. Maine, 527 U.S. 706 (1999); Franchise Tax Bd. v. Hyatt, 139 S. Ct. 1485 (2019); Coyle v. Smith, 221 U.S. 559 (1911); Lessee of Pollard v. Hagan, 44 U.S. (3 How.) 212 (1845).

(e) **Rucho Baseline (Non-justiciability).** California claimed for itself the very power Rucho denies to any federal court—policing partisan gerrymandering nationwide—and did so outside the channels the Constitution provides.

(f) **Texas v. Pennsylvania (standing).** The Court rejected any judicially cognizable State interest in how another State conducts its elections. 592 U.S. ___ (Dec. 11, 2020) (order). California nevertheless claimed Texas's internal maps **"will

**disenfranchise Californians"** (Ex. C) while declining to seek leave in the Supreme Court.

14.    Acts taken without constitutional authority are **void ab initio**. Norton v. Shelby County, 118 U.S. 425, 442–43 (1886). The same conduct destroys the predicates of any claim to sovereign immunity in federal court—coequal dignity, equal footing, comity, and fidelity to Article III as referee—and warrants PERMANENT forfeiture of Eleventh Amendment immunity in the courts of the United States.

15.    Any analysis sounding in **preemption** or **intergovernmental immunity** is, at best, an **alternative** ground. Those doctrines presuppose some state regulatory foothold. Here, Article I, § 8, cl. 18 forecloses **any** state foothold ab initio. SB 627 is therefore **ultra vires even before** one reaches intergovernmental-immunity or preemption.

16.    Plaintiff proceeds, therefore, on California's chosen ground. The State's maxim—"ignorance of the law is no excuse"—strips away its defenses. The controversy the State admitted—a "fight" with Texas that it says **"will disenfranchise Californians"** (Ex. C)—strips away its jurisdiction. What remains is straightforward: ultra vires action, void ab initio, repeated in a pattern that warrants declaratory, injunctive, and permanent sovereign-immunity forfeiture relief commensurate with the structural violations pled.

––––––

## I. INTRODUCTION / PRELIMINARY STATEMENT

17.    In August–September 2025, California's highest officials twice repudiated Article III adjudication and appropriated powers belonging to: (i) the Supreme Court (exclusive original forum for controversies "between two or more States"); (ii) Congress (Elections Clause standards); and (iii) Article III district courts/the federal executive (quasi-sovereign disputes). Simultaneously, they asserted oversight over all 49 sister States' Art. I, § 4 prerogatives—**"nullify ... in Texas or any state"** (Ex. A)—and enacted SB 627 to command federal and out of state law enforcement officers—**""**—in their official duties (Ex. D). (Exs. A–D.)

18.    These are admissions under FRE 801(d)(2) and direct evidence of official purpose under Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 267–68 (1977). With New Hampshire v. Maine estoppel and the Attorney General's adoptive admissions, Defendants are bound by these positions.

19.    Sovereign immunity in federal courts is a judicial courtesy grounded in coequal dignity, equal footing, and comity—not an unmoored shield. Hans; Alden; Hyatt; Coyle; Pollard.

20.    Because expulsion from the Union is off the table (Texas v. White, 74 U.S. (7 Wall.) 700 (1869)), the calibrated remedy is: (a) declare the measures **void ab initio** (Norton); (b) PERMANENT forfeiture of Eleventh Amendment immunity in the courts of the United States; (c) prophylactic Ex parte Young injunctions; and

(d) declaratory allocation confirming the federal forums and powers (Rucho; Art. III; 28 U.S.C. § 1251(a)–(b)).

———

## II. JURISDICTION, VENUE, AND DIVISION

21.    Jurisdiction lies under **28 U.S.C. §§ 1331, 1343, 2201–2202; U.S. Const. arts. I & III; and the Supremacy Clause. Article III controversies and the Elections Clause allocation are presented for declaratory and injunctive relief.**

22.    Venue is proper under **28 U.S.C. § 1391(b)**. Acts and omissions occurred in California, including Sacramento; Plaintiff resides within this District. Assignment to the Fresno Division is proper.

23.    Prospective official-capacity relief lies under **Ex parte Young, 209 U.S. 123 (1908)**.

———

## III. STANDING AND JUSTICIABILITY (PREEMPTIVE ALLEGATIONS)

24.    **Article III Injury (Structural, Pre-Enforcement, Personal Exposure).** Plaintiff asserts a present, concrete, and particularized injury arising from Defendants' repudiation of Article III and appropriation of federal powers (Exs. A–D). Twice in ~30 days, Defendants: (i) claimed an interstate injury from another State's redistricting and promised to **"nullify ... in Texas or any state"** (Ex. A), while bypassing the Supreme Court's exclusive State-v-State forum (Art. III § 2; 28 U.S.C. § 1251(a)); and (ii) claimed a quasi-sovereign injury from federal immigration officers yet legislated directly against the federal executive via SB 627 rather than suing in district court or seeking Congressional relief (see Johnson v. Maryland, 254 U.S. 51, 57–58 (1920); Tarble's Case, 80 U.S. (13 Wall.) 397, 411–12 (1872); In re Neagle, 135 U.S. 1, 63–64 (1890); Hancock v. Train, 426 U.S. 167, 178–81 (1976); Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 180–81 (1988)). Plaintiff is subject to California's jurisdiction, and thus faces actual exposure to this governance method that treats Article III as optional.

**24A. Voluntary-cessation standard (heavy burden).** A defendant's voluntary cessation **does not** deprive a federal court of power to determine legality unless it is **"absolutely clear"** the challenged conduct **cannot reasonably be expected to recur.** Friends of the Earth, Inc. v. Laidlaw, 528 U.S. 167, 189–90 (2000); see also City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 (1982) (repeal doesn't moot where government can reenact); Already, LLC v. Nike, Inc., 568 U.S. 85, 91–93 (2013) (defendant bears a "formidable burden").

**24B. Application here—California cannot meet Laidlaw's "absolutely clear" burden.** The record shows **continuity of actors, measures, and purposes**, not

repudiation:

• **Two apex episodes within ~30 days**: (i) **ACA/Prop 50** referral and gubernatorial messaging asserting power to **"nullify ... in Texas or any state"** and to act **"until [Congress] acts"** (Exs. **A–C**, Aug. 14 & Aug. 21, 2025); and (ii) **SB 627** signed **September 20, 2025**, with an official release that it **"bans federal ... including ICE"** and **"requires officers to display their faces ... when ... conducting raids or engaging in other official duties."** (Ex. **D**), **effective January 1, 2026**.

• **Same decisionmakers remain**: the **same Governor** who proposed/announced Prop 50 and **signed SB 627** (Exs. A–D); the **same supermajority Legislature** that passed both measures; and the **same Attorney General** who publicly proclaimed "Separation of Powers ... We will not allow anyone to trample on it" (Sept. 17, 2025) yet **did not repudiate** the extraterritorial and Necessary-and-Proper assertions (¶¶ 6–8; Exs. A–D).

• **No rescission or disclaimer**: there has been **no formal rescission** of the ACA/ Prop 50 posture, **no withdrawal** of the "ALL 50 States" framing, and **no repudiation** of SB 627's reach to **federal officers**; SB 627 remains set to take effect **Jan. 1, 2026** (Ex. D).

• **Ongoing capacity and incentive**: the same officials, same supermajority, and same stated goals ("nullify ... in Texas or any State"; act "until Congress acts") demonstrate a **continuing ability and intent** to repeat forum-bypass and federal-power seizures.

**Conclusion:** California cannot carry Laidlaw's "absolutely clear" burden. See Laidlaw, 528 U.S. at 189–90; Mesquite, 455 U.S. at 289; Already, 568 U.S. at 91– 93.

25.    **Bond Standing (Individuals Vindicate Federalism to Protect Liberty).** Individuals may vindicate structural allocations because they secure personal liberty. Bond v. United States ("Bond I"), 564 U.S. 211, 222–24 (2011); Bond v. United States ("Bond II"), 572 U.S. 844, 857–60 (2014). California's forum-bypass/ self-help posture (Exs. A–D) collapses the structural safeguards Bond identifies; Plaintiff therefore has standing to restore the constitutional allocation before those safeguards fail him.

26.    **Not a "Generalized Grievance."** This is not an ideological objection to policy. Plaintiff alleges a personal exposure to a state legal environment that has openly repudiated Article III adjudication in sovereign-level disputes and assumed powers of SCOTUS, Congress, federal courts, and sister States. Unlike Texas, SCOTUS, or ICE—each of which can meet California on proper federal ground or ignore extraterritorial claims—Plaintiff cannot: he lives under California's police power, regulatory agencies, and courts. That asymmetry makes the injury particularized to him. See Bond I, 564 U.S. at 222–24.

27.    **Pre-Enforcement Structural Injury Is Cognizable.** Article III recognizes pre-enforcement injury where there is a credible threat of unlawful government action or subjection to an unconstitutional structure. Free Enter. Fund v. PCAOB, 561 U.S. 477, 490–91 (2010); Seila Law LLC v. CFPB, 140 S. Ct. 2183,

2197–2207 (2020); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128–34 (2007); Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158–67 (2014).

28.  **Imminence and Concreteness (Answering Lujan/Clapper/ TransUnion).** (a) Imminence: California's two-episode pattern in ~30 days (Exs. A–D) renders further application certainly impending or, at minimum, creates a substantial risk to Plaintiff's federal rights. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013). (b) Concreteness: Plaintiff is presently governed by a State that denies the assigned federal forums and claims others' powers; that denial undermines the availability and efficacy of federal judicial protection for Plaintiff's rights now. Cf. TransUnion LLC v. Ramirez, 594 U.S. 413, 423–26 (2021). (c) Not speculative: Defendants have already bypassed Article III twice; this is not a hypothetical chain like Lujan v. Defs. of Wildlife, 504 U.S. 555 (1992), or Summers v. Earth Island Inst., 555 U.S. 488 (2009).

29.  **Causation (Traceability).** The injury is fairly traceable to Defendants' official acts and admissions—the Aug. 14 gubernatorial statement and release; Aug. 21 signing/press remarks and Assembly floor statements; and the enactment and signing of SB 627 (Exs. A–D)—all binding under FRE 801(d)(2)(A), (B), (D) and New Hampshire v. Maine, 532 U.S. 742 (2001).

30.  **Redressability.** Declaratory allocation (Art. I § 4; Art. III; 28 U.S.C. § 1251(a)–(b)), Ex parte Young injunctions, **void-ab-initio** relief (Norton), and PERMANENT forfeiture of Eleventh Amendment immunity in the courts of the United States will eliminate or materially reduce the risk that Defendants will deny Article III's authority when Plaintiff's rights are at stake, satisfying Lujan.

31.  **Prudential/Zone-of-Interests; No Abstention.** Plaintiff asserts claims protecting the federal structure that secures individual liberty; he does not ask the Court to referee policy merits. The case sits within the zone of interests of the Constitution's allocation-of-powers provisions and the Supremacy Clause. No Younger/Pullman/political question bar applies.

———

# IV. PARTIES

32.  Plaintiff N.M. is a U.S. citizen, California resident and eligible voter, proceeding pro se. Bond, 564 U.S. 211; 572 U.S. 844.

33.  Defendant State of California is a sovereign United States State admitted on equal footing with the original States in 1850. See Coyle v. Smith, 221 U.S. 559 (1911); Pollard v. Hagan, 44 U.S. (3 How.) 212 (1845).

34.  Defendants Gavin Newsom, Rob Bonta, Shirley N. Weber, Mike McGuire, and Robert Rivas are sued in their official capacities for declaratory/injunctive relief. DOES 1–10 are unknown state officials.

———

# V. PRO SE CANON (CONSTRUCTION)

35.  (a) Rule 8(e) (formerly 8(f)) — "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).

(b) Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (per curiam) — Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," and courts must liberally construe them.

(c) Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) — Even post-Twombly, courts may not demand "heightened fact pleading" from a pro se litigant; a short, plain statement that plausibly shows entitlement to relief suffices.

(d) Johnson v. City of Shelby, 574 U.S. 10, 11–12 (2014) (per curiam).

(e) Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

(f) Bretz v. Kelman (en banc), 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).

(g) Karim-Panahi v. LAPD, 839 F.2d 621, 623–24 (9th Cir. 1988).

(h) Eldridge v. Block, 832 F.2d 1132, 1135–37 (9th Cir. 1987).

(i) Lopez v. Smith (en banc), 203 F.3d 1122, 1130–31 (2000).

(j) Noll v. Carlson, 809 F.2d 1446, 1448–49 (1987).

(k) Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (liberal construction continues for pro se litigants; reasonable inferences drawn in plaintiff's favor).

———

## VI. VERBATIM ADMISSIONS (EXHIBITS A–C) — FRE 801(d)(2)

36.  **Exhibit A — @CAgovernor Tweet (Aug. 14, 2025) (Verbatim):**
"**California** will not sit idle as @realDonaldTrump and Republicans take a wrecking ball to our democracy. This moment calls for urgency and **action. That's why we're giving voters a way to fight back** and **nullify congressional gains in Texas or any state that tries to rig its maps.**"

37.  **Exhibit B — Governor Newsom Press Conference (Aug. 21, 2025) (AP video(YouTube): "Texas 'shot the first bullet': Newsom signs legislation for special election on redistricting" )**

"We're here at a **moment with deep sobriety** uh recognizing that we need to reconcile this moment, but **we're going to meet the moment not just with rhetoric, but through action**. Uh **we're not just identifying a problem. We're actually trying to solve a problem. And it's a problem of their making.** This was not
the press conference we intended to have. This is not **an action the legislature** uh intended **to advance.** This is not an **election** uh we expected to be **holding** uh **on November 4th.** But **they shot the first bullet. They took an action in Texas and we're responding to it.** And I continue to make this point. **We're no longer hand ringing and debating of whether or not we should play hard**

ball in response. It's how now. This is not something six weeks ago that I ever imagined we would be doing. **This is being done in response from Texas.** This was not an organized effort. **This was a reaction to an assault on our democracy in Texas.** And **we're going to continue to support** uh **those that are of like mind** uh **to get the vote out** uh **and to get the word about what this is all about."**

37A. **Exhibit C — Assembly Floor Statement (Aug. 2025) (Verbatim; Speaker: Assemblymember Josh Lowenthal):**

"Thank you, Madam Speaker.

I love you, Dad. I've been deeply torn by the national redistricting debate that has engulfed California. Beyond its vastly consequential political implications, this issue has profoundly impacted me personally, because indelibly seared into my consciousness is the memory of my father working tirelessly over decades to create the independent redistricting system about which we now debate.

By way of background, my dad, a community psychologist, was elected to the California State Assembly in 1998. He ran for public office with the principal goals of restoring public trust in political institutions and ensuring that elected officials listened to their constituents. To effectuate those ideals, he believed that an independent redistricting system was necessary.

So in 2002, on this very floor, he introduced a constitutional amendment, ACA 19, to create an independent redistricting commission. But his attempt received no support, and it died. Undeterred, he reintroduced the independent redistricting commission concept once again in the Assembly, but that effort too failed. And then in 2006, as a state senator, he reintroduced the concept as SCA 3. And for the first time ever, the concept of independent redistricting passed one of our bicameral bodies. However, as described by Common Cause, quote: 'Somewhere in the one-minute walk from the Senate Clerk's Office to the Assembly Clerk's Office, SCA 3 was lost for just long enough to miss key deadlines to keep the bill alive.'

The SCA's failure was devastating, but my dad's unwavering effort paved the way for the electorate to adopt an independent redistricting commission two years later. But his work did not end there. **Upon going to Congress in 2012, the first piece of legislation he introduced was H.R. 2978, the Let the People Draw the Lines Act. This legislation would have required that all states establish independent redistricting commissions. Tragically, the legislation was met by political headwinds and died.** But despite that, my dad pressed forward on his quixotic quest to establish reform on a national level, because he knew that a

system in which some states had districts drawn independently and others did not was fundamentally unfair.

**Because Congress refused to hold a vote on his measures, he commenced advocating for reform in the courts.** In 2015, he led an amicus brief in support of Arizona's right to form an independent commission. And then in 2017, he led an amicus brief in Gill v. Whitford, in which **he asked the Supreme Court to declare political gerrymandering unconstitutional**. Although **the Court did not do so**, Justice Kagan, in an opinion joined by Justices Ginsburg, Breyer, and Sotomayor, cited my dad's brief, writing: 'The congressional brief describes a cascade of negative results from excessive partisan gerrymandering—indifference to swing voters and their views; extreme political positioning designed to placate the party's base and fend off primary challengers; the devaluing of negotiation and compromise; and the impossibility of reaching pragmatic, bipartisan solutions to the nation's problems.'

I vigorously agree with the evils of gerrymandering described in my dad's brief and cited by Justice Kagan. That notwithstanding, **because Texas has now shamelessly affected the national balance of power, our nation's democracy is faced with an exigency of existential dimensions. If unaddressed, Texas's actions**—which occurred without the vote of its populace—**will disenfranchise Californians.** And we must not allow Californians' voices to be silenced. **It is imperative that Californians have a voice in selecting the political party that controls Congress in 2026.**

The most fundamental concept in our democracy, upon which our collective value system is predicated, is fairness. When Californians vote in 2026, our votes must be made on a level playing field. This constitutional amendment ensures that we have that balanced field. **We must all continue to press Congress to create a national system that eliminates unconstrained political redistricting. But until that occurs, fair representation** for Californians **cannot exist without this measure.**

So today, I proudly join with my father—the architect of this commission—in urging its temporary suspension. I respectfully ask for **your 'aye' vote on this ACA."**

37B. Exhibit D: ("**PRESS RELEASE
Governor Newsom Signs Senator Wiener's Ban On Extreme Masking By ICE &
Other Law Enforcement
SEPTEMBER 20, 2025"**):

" **The No Secret Police Act (SB 627)**
**SB 627 prohibits** local, **federal, and out of state law enforcement officers, or**

**anyone acting on behalf of a federal officer**, from wearing facial coverings that conceal their identity while in the performance of their duties. This bill also requires law enforcement agencies to adopt a policy governing the use of facial coverings by July 1, 2026. **This bill defines law enforcement officers** as **any** peace officer at the local **or federal level, any person acting on behalf of a federal law enforcement agency, or any out of state officer.**

The finalized version of SB 627 provides the following exemptions:

- SWAT teams
- Approved undercover assignments
- Translucent or clear masks
- Motorcycle helmets
- Eyewear to protect against retinal weapons
- N95 medical or surgical mask
- Breathing apparatuses necessary to protect against toxins, gas, and smoke
- Masks to protect against inclement weather
- Masks for underwater operations

**A willful and knowing violation of the bill could result in either an infraction or misdemeanor. This criminal penalty does not apply to officers whose law enforcement agency maintains a policy on facial masking that meets robust standards set by SB 627. The civil penalty in SB 627 applies only to officers who are found to have committed an assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution while willfully and knowingly covering their face in violation of SB 627's masking prohibition.**

SB 627 is joint authored by Senators Pérez (D-Pasadena), Arreguin (D-Berkeley), and Wahab (D-Hayward),  principal coauthored by Assemblymember Bryan (D-Los Angeles) and coauthored by Senators Ashby (D-Sacramento), Becker (D-Menlo Park), Caballero (D-Merced), Gonzalez (D-Long Beach), McNerney (D-Pleasanton), Menjivar (D-Los Angeles), Padilla (D- San Diego), Smallwood-Cuevas (D-Los Angeles), Stern (D-Los Angeles), Weber Pierson (D-San Diego), and **Assembly Members Bonta (D-Oakland)**,  Carrillo (D-Palmdale), Elhawary (D-South Los Angeles), Garcia (D-Rancho Cucamonga), Gipson (D-Carson), Mark González (D-Los Angeles), Haney (D-San Francisco), Jackson (D-Moreno Valley), Kalra (D-San José), Lee (D-Milpitas), McKinnor (D-Inglewood), Ortega (D-Hayward), Quirk-Silva (D-Fullerton), Rogers (D-Santa Rosa), Schultz (D-Burbank), Sharp-Collins (D- San Diego), Solache (D-Lynwood), and Wilson (D-Suisun City)*.
"

———

## VIII. SB 627 — NECESSARY & PROPER EXCLUSIVITY; SUZERAINTY OVER FEDERAL & SISTER-STATE OFFICERS; NOT "JUST PREEMPTION"

**38. Targeting federal and sister-state officers (party/agent admissions;**

**verbatim).**
The State's official SB 627 description declares:

"**SB 627 prohibits local, federal, and out of state law enforcement officers**, or anyone acting on behalf of a federal officer, **from wearing facial coverings that conceal their identity while in the performance of their duties.** This bill also **requires** law enforcement agencies to adopt a policy governing the use of facial coverings by July 1, 2026."
"This bill defines law enforcement officers as **any peace officer at the local or federal level, any person acting on behalf of a federal law enforcement agency, or any out of state officer.**"
"A willful and knowing violation of the bill could result in either an infraction or misdemeanor... [and] a civil penalty ... for officers ... **while willfully and knowingly covering their face in violation of SB 627's masking prohibition.**"
(Ex. D; legislative *.ca.gov* domain; FRE 801(d)(2)(D).)

**39. Necessary & Proper (Art. I, § 8, cl. 18) is exclusive for federal officer means-and-manner.**
Only Congress may "make all Laws ... necessary and proper for carrying into Execution ... all other Powers vested ... in any Department or **Officer of the United States.**" Regulating **equipment/appearance/identification** of federal officers **while executing federal law** sits at the core of that clause and Article II's Take Care duty. *McCulloch*; *Johnson v. Maryland*, 254 U.S. 51, 57–58 (1920); *In re Neagle*, 135 U.S. 1, 63–64 (1890); *Tarble's Case*, 80 U.S. (13 Wall.) 397, 411–12 (1872).

**40. There is no "shared field" here.**
Preemption/intergovernmental-immunity frameworks presuppose some State foothold subject to displacement. **SB 627 asserts none—it directly commands on-duty conditions** of federal officers (and those "acting on behalf of" them). That is **federal** lawmaking, not concurrent regulation. See *McCulloch*; *Johnson*; *Neagle*; *Tarble's Case*.

**41. Not "just preemption" — and Exhibit D is sui generis.**
"Preemption" fits when States and Congress may both speak until Congress speaks last. **SB 627 speaks where California has no voice: conditions of federal service** and **command over other States' officers**, with **no territorial limiter** ("any ... federal ... or **any out of state officer**"). No nullification/interposition episode produced a statute that baldly claims **operational control over other sovereigns' officers**. This is **sui generis**, incompatible with co-equal sovereignty: a State asserting **superiority** over equals cannot claim the **immunity reserved to equals.**

**42. Traffic-law analogy fails.**

Conflating private/off-duty conduct with **on-duty federal execution** is error. Even neutral rules cannot **obstruct** federal service. *Johnson*, 254 U.S. at 57–58. Here, California **commands** what federal officers must wear and how they must present **while making arrests, conducting raids, or engaging in official duties**—the heartland of federal operations. (Ex. D.)

**43. On-duty command = federal means-and-manner control.**
By **mandating face display** and **banning** specified protective gear during arrests/raids/official duties (with State-policed "exceptions"), SB 627 **chooses the means** by which federal law is executed—choices reserved to Congress and the Executive, **not** to States. (Ex. D; *McCulloch*; *Johnson*; *Neagle*.)

**44. Intergovernmental immunity (even if the field were shared).**
Indulging concurrence arguendo, SB 627 still fails: it **discriminates against/burdens** federal instrumentalities **on its face**—"local, **federal**, and out of state law enforcement officers … are prohibited…," with **criminal and civil exposure**. *McCulloch*; *Hancock v. Train*, 426 U.S. 167, 178–81 (1976); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180–81 (1988).

**45. Immigration primacy (ICE).**
Targeting "**federal … including ICE**" operational conduct collides with a **plenary federal domain**. *Arizona v. United States*, 567 U.S. 387 (2012); *Hines v. Davidowitz*, 312 U.S. 52 (1941).

**46. Operational interference confirms the defect.**
Protective masking/identity nondisclosure may be **mission-critical** (high-risk entries, undercover transitions, informant protection, ambush deterrence). Conditioning federal arrests/raids on State-set "face display" rules with **State-defined carve-outs** obstructs execution of federal law. *Johnson*, 254 U.S. at 57–58. (Ex. D (exception list).)

**47. Admissions nail purpose/effect; DHS-veto refusal underscores defiance.**
Exhibit D emphatically advertises the reach: "**prohibits … federal … including ICE**"; "**requires officers to display their faces** … during official duties," and highlights that DHS leadership **urged a veto** yet the Governor **signed anyway**—confirming a choice to **confront** federal operations legislatively rather than use **Article III** channels. (Ex. D; FRE 801(d)(2)(D); adoptive silence by other apex actors, FRE 801(d)(2)(B).)

**47A. No inference required (chief author; post-passage; official domain).**
Exhibit D is the bill's **chief author**, State **Senator Scott Wiener (Harvard J.D.)**, issuing an **official, post-passage** description on a **.ca.gov** legislative site. That makes it (i) a **party admission** by an agent/authorized spokesperson about a matter within the scope of the relationship (**FRE 801(d)(2)(D), (C)**); (ii) **judicially**

**noticeable** as a government record (**FRE 201(b)(2)**); and (iii) **direct Arlington Heights evidence** because it is a contemporaneous, official explanation of purpose and operation by a decisionmaker. Given its timing and posture—stating what SB 627 **does** in the present tense ("**prohibits local, federal, and out of state law enforcement...**"; "**requires officers to display their faces**")—this is the State's **authoritative gloss**, not outside commentary. The Governor's signature despite DHS's request to veto, and the Attorney General's non-repudiation, further operate as **adoptive admissions** (**FRE 801(d)(2)(B)**).

**48. "Exceptions" don't save it; they invert the hierarchy.**
State-policed exceptions make California the **gatekeeper** of **federal** and **sister-state** operational choices and threaten **state penalties** for **federal conduct** absent agency policies that **meet SB 627's standards**. (Ex. D.)

**49. Facial/as-applied invalidity (federal officers).**
SB 627 is **facially invalid** insofar as it purports to regulate the on-duty conduct of federal officers or persons acting under federal direction, and **as-applied invalid** in any investigation/citation/prosecution predicated on federal duties. Declaratory relief and *Ex parte Young* injunctions are warranted. *McCulloch*; *Johnson*; *Neagle*; *Tarble's Case*.

**50. Structure-first injury.**
As in *Chadha*, *Free Enterprise Fund*, and *Seila Law*, the **assertion** of power that **rearranges constitutional lines** is itself the injury. California's claim to **command** federal/sister-state officers **by State statute** is the breach.

**51. Voluntary-cessation cannot moot; recency and pattern control.**
Within ~30 days of the August apex posture promising to **"nullify ... in Texas or any state"** (Exs. A–C), the State enacted SB 627's **on-duty commands** for federal/sister-state officers (Ex. D). The State cannot make it **"absolutely clear"** the behavior will not recur. *Laidlaw*, 528 U.S. at 189–90; *City of Mesquite*, 455 U.S. at 289.

**52. Continuity = recurrence risk.**
**Same Governor** (Prop 50 proponent/SB 627 signer), **same supermajority Legislature** (passed both), **same Attorney General** (no repudiation). No rescission; no disclaimer; SB 627 set to take effect Jan. 1, 2026. (Exs. A–D.) *Laidlaw*'s burden is **not** met.

**53. Arlington Heights mapping (now with A–C verbatim).**
(a) **Sequence:** "Nullify ... in Texas or any State" (Exs. A–B) → rapid enactment of a statute **aimed directly** at **federal** and **out-of-state** officers (Ex. D).
(b) **Departures:** Instead of suing the United States in district court (28 U.S.C. § 1251(b)(2)), pursuing congressional relief, or using intergovernmental channels,

California **legislated against** federal/sister-state **operations—a forum bypass** of Article III.

(c) **Statements (Exhibit D):** "prohibits ... federal ... **including ICE**" and "**requires officers to display their faces** ... when ... **conducting raids or engaging in other official duties**"; DHS urged veto; Governor signed. (Ex. D; FRE 801(d)(2)(D).)

(d) **Impact:** Imposes State-set conditions/penalties on **federal arrests/raids** and on **other States' officers—means-and-manner** control.

**(e) Exhibit A (Governor, sovereign voice; verbatim).**

"California will not sit idle ... **we're giving voters a way to fight back and nullify congressional gains in Texas or any state that tries to rig its maps.**" (FRE 801(d)(2)(A).) This is an express declaration of an **interstate controversy** (California vs. "Texas or any state") with a promised **self-help remedy**, bypassing **Art. III § 2** and **28 U.S.C. § 1251(a).**

**(f) Exhibit B (Governor press; verbatim highlights).**

"**They shot the first bullet. ... This was a reaction to an assault on our democracy in Texas. ... We're responding to it. ... We're no longer ... debating ... it's how now. ... This is being done in response from Texas. ... We're going to continue to support those that are of like mind.**" (FRE 801(d)(2)(A).) Framing Texas's **Art. I § 4** exercise as an **assault** and a **"first bullet"** confirms an asserted **interstate controversy**—but California **did not file** an original action in the Supreme Court.

**(g) Exhibit C (Assembly floor; verbatim gist you provided).**

"**Press Congress ... But until that occurs ... fair representation for Californians cannot exist without this measure.**" (FRE 801(d)(2)(D).) This is a candid admission that California intends to **exercise Congress's override power under Art. I § 4, cl. 1** ("Congress may at any time by Law make or alter...") **until Congress acts**—an explicit **seizure of federal override authority**. The Legislature thus acknowledged both (i) the **federal forum** and (ii) the **federal override**—then **proceeded to bypass both**.

**54. "We regulate our own officers too" is irrelevant.**
California may regulate **California's** officers. The defect is the statute's **express sweep** to **federal** and **out-of-state** officers—the very feature the State **advertises**. (Ex. D.)

**55. Equal-sovereign dignity; Hyatt III and Coyle foreclose sister-state command.**
*Hyatt III*, 587 U.S. 302 (2019), vindicates **co-equal sovereign dignity**—a State may not hale a sister sovereign without consent. A fortiori, a State may not **legislate supervisory command** over a sister State's **officers**. *Coyle v. Smith*, 221 U.S. 559 (1911) (equal footing). SB 627's **"any ... out of state officer"** clause **repudiates** that predicate.

**56. Jurisdictional nullity; void ab initio.**
SB 627 asserts powers **textually assigned** to the United States (Art. I § 8, cl. 18; Art. II) and **denies** equal sovereignty among States (Hyatt III; *Coyle*). It is **not merely preempted**—it is a **jurisdictional nullity** and **void ab initio**. *Norton v. Shelby County*, 118 U.S. 425, 442 (1886). Interstate controversies belong in **Article III** with the Supreme Court's **exclusive** docket. U.S. Const. art. III § 2; 28 U.S.C. § 1251(a).

**57. Bridge to the structural remedy (permanent forfeiture).**
**This is the second apex episode in ~30 days**: first, **horizontal suzerainty**—California openly declared a **controversy with "Texas or any state"** and promised to **"nullify ... in Texas or any state"** (Ex. A), publicly framed Texas's **Art. I § 4** choices as a **"first bullet"/"assault"** while announcing **self-help** instead of filing in the Court with **exclusive** jurisdiction (Ex. B), and **admitted** the Legislature would **exercise Congress's Art. I § 4 override power "until [Congress] acts"** (Ex. C); then, **vertical suzerainty**—SB 627 **commands federal officers** and **other States' officers** (Ex. D). That pattern **destroys the predicates** of Eleventh Amendment immunity—**co-equal dignity, equal footing, comity, and Article III discipline**—and **compels permanent forfeiture** of sovereign immunity in the courts of the United States.

———

## IX. ACA 8 / PROP 50 — ELECTIONS CLAUSE SUBSTITUTION & ARTICLE III § 1251(a) SEIZURE (WITH ADMISSIONS)

58.   **The theory in the State's own words.** In rolling out ACA 8 / Prop 50, California's apex officials publicly framed (i) a **national** project to **"nullify congressional gains in Texas or any State"** viewed as "rigged," and (ii) an **interstate injury** to California from Texas's internal redistricting—then chose a **California ballot** rather than the Supreme Court's exclusive forum for State-versus-State controversies. *(Ex. A: "we're giving voters a way to fight back and* ***nullify*** *congressional gains* ***in Texas or any state*** *..."; Ex. B: "**They shot the first bullet** ... in Texas and **we're responding to it**"; Ex. C: "We must all continue to press **Congress** ... **But until that occurs** ... this measure." FRE 801(d)(2); RJN (URLs on file).)*

59.   **Elections Clause allocation (Art. I, § 4, cl. 1).** The Clause splits authority: **each State** prescribes the time, place, and manner of elections **for itself; but Congress may at any time by Law make or alter such regulations** nationwide. California's admissions claim to occupy that second, **Congress-only** seat **"until Congress acts."** *(Ex. C ("press Congress ... **But until that occurs** ... this measure").)*

60.   **Substitution, not parallelism.** California is not merely using its own § 4

power "for California." It is claiming a national override **in place of Congress**, applied to **other States ("Texas or any State").** *(Ex. A; Ex. C.)* That converts the Clause into: "but **Congress or California** may at any time by Law make or alter such Regulations."

61. **Rucho forecloses the judiciary; it does not open a lane for a single State to act for Congress.** *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), holds partisan-gerrymandering claims non-justiciable absent congressional standards; it **reserves** nationwide rules to **Congress**. It does not authorize **California** to supply them for **Texas** or anyone else.

62. **Texas v. Pennsylvania forecloses interstate standing to police sister-State elections.** The Supreme Court held a State has no judicially cognizable interest in how another State conducts its elections. 592 U.S. ___ (2020) (order). California's theory—Texas "will disenfranchise Californians" *(Ex. C)* —is the very claim *Texas v. Pennsylvania* rejected.

63. **Article III § 2 & 28 U.S.C. § 1251(a): exclusive original jurisdiction.** Having declared a **State-versus-State** injury ("**They shot the first bullet … in Texas and we're responding**") *(Ex. B)*, California was obligated to seek leave to file in the Supreme Court. § 1251(a) is **exclusive**. Mississippi v. Louisiana, 506 U.S. 73, 77–78 (1992).

64. **The exclusive forum was seized, not invoked.** Instead of a Rule 17 / Rule 20 application, California **self-adjudicated** the controversy by placing its remedy on a **California** ballot (ACA 8 / Prop 50). That is a naked **seizure** of the Supreme Court's exclusive docket.

65. **Horizontal parity destroyed. "Nullify … in Texas or any State"** *(Ex. A)* asserts supervisory power over coequal sovereigns—repudiating equal footing/ comity, the very predicates undergirding modern sovereign-immunity doctrine (Hans; Alden; Hyatt; Coyle; Pollard).

66. **Article V backstop jumped.** One State cannot alter the federal allocation by initiative: (i) inserting itself where the Elections Clause assigns **Congress**; (ii) bypassing Article III's **exclusive** interstate forum; and (iii) superintending sister States' § 4 choices. These are **de facto amendments** without Article V.

67. **Arlington Heights purpose evidence (ACA 8 / Prop 50).**
a. **Contemporaneous statements**: "nullify … in Texas or any State" *(Ex. A)*; "**They shot the first bullet** … in Texas" *(Ex. B)*; "**press Congress … But until that occurs** … this measure" *(Ex. C)*.
b. **Sequence of events**: August 14 announcement *(Ex. A)* → August 21 signing remarks framing Texas-on-California "assault" *(Ex. B)* → floor speech announcing interim occupation of Congress's slot *(Ex. C)*.
c. **Departure from normal channels**: Rather than Supreme Court original jurisdiction or congressional legislation, California chose a **state ballot** to adjudicate an interstate grievance.
d. **Impact**: The measure is branded for "**ALL 50 STATES**," promising nationwide effect.

68. **No benign gloss survives the admissions.** Under *Arlington Heights*, courts look past sterile text to what **decisionmakers said and did**. The Exhibits are admissions under FRE 801(d)(2) and direct purpose evidence; they bind the State and defeat later re-characterizations.

69. **Not saved by "California is just using its own § 4 power."** The admissions expressly disavow a purely intrastate aim: they assert **national** nullification and an **interstate** injury. *(Exs. A–C.)* That is not "each State shall prescribe" for itself.

70. **Not saved by "policy urgency."** Structural limits do not yield to perceived exigency. See *Free Enterprise Fund*; *Seila Law*; *Chadha*. "Efficiency and convenience do not save" measures contrary to the Constitution. *Chadha*, 462 U.S. at 944.

71. **Interstate comity and dignity (Hyatt) run the other way.** If a single tort suit in a sister State's court was an "affront to sovereign dignity," *Hyatt* (2019), then a plebiscitary **nationwide** "nullify any State" regime is an a fortiori affront—collapsing the parity that justifies immunity.

72. **Pre-election relief (Prop 50) tailored to Purcell.** To avoid election-administration disruption while preventing constitutional injury:
(i) **Enjoin certification and legal effect** of any Prop 50 result (no canvass, no proclamation, no operative legal consequence);
(ii) **Permit** ordinary administrative steps (printing/ballot layout/voter guides) to proceed without **legal effect**;
(iii) **Clarify** that no state official may treat any Prop 50 tally as operative law pending final judgment. (Purcell-sensitive, structure-protective.)

73. **Declaratory allocation (ACA 8 / Prop 50).** The Court should declare:
(a) **Elections Clause**: Only **Congress** may impose national standards; a single State may not act "until Congress acts."
(b) **Article III / § 1251(a)**: Any State-versus-State redistricting/representation injury must be brought in **the Supreme Court** by motion for leave; California may not adjudicate it by plebiscite.

74. **Void ab initio.** Measures taken **without** constitutional authority are null from inception. *Norton v. Shelby County*, 118 U.S. 425, 442–43 (1886). ACA 8 / Prop 50's asserted powers fall outside any state lawmaking competence.

75. **Voluntary-cessation burden (heavy).** Even if Defendants softened rhetoric or paused advancement, apex acts plus admissions block mootness absent proof "**absolutely clear**" the wrongful conduct **cannot reasonably be expected to recur.** *Laidlaw*, 528 U.S. at 189–90; *City of Mesquite*, 455 U.S. at 289. With the same Governor, Legislature, and Attorney General in office, that burden cannot be met on this record. *(Exs. A–C; Preamble ¶¶ P2–P7.)*

76. **Structural consequences: forfeiture of immunity for this controversy and related proceedings.** Sovereign immunity beyond the Eleventh Amendment's text rests on coequal dignity, equal footing, comity, and fidelity to Article III's referee role (Hans; Alden; Hyatt). By repudiating those predicates—asserting national supervisory power and seizing the Supreme Court's exclusive

docket—California forfeits the courtesy **for this controversy and related enforcement actions**.

77. **Counts cross-reference (preview).** The facts above support:
— **Count I (Supremacy / ultra vires)** — usurpation of Congress's dormant Elections-Clause role;
— **Count II (Article III exclusive original jurisdiction bypass)** — § 1251(a) seizure;
— **Count IV (Elections Clause violation)** — national-standards substitution;
— **Count V (Horizontal federalism / equal footing)** — supervisory posture over sister States;
— **Count XI (Declaratory allocation)** — Congress-only national standards; SCOTUS-only interstate forum;
— **Counts VIII & X (Forfeiture / Young prophylaxis)** — remedy calibration.

78. **Remedial statement (Prop 50).** Plaintiff seeks **(a)** a declaration that ACA 8 / Prop 50 is void ab initio to the extent it purports to act for Congress or to adjudicate interstate controversies; **(b)** a **Purcell-sensitive** injunction barring certification/legal effect of any Prop 50 result; and **(c)** confirmation that any interstate claim must proceed, if at all, by motion for leave in the Supreme Court under § 1251(a).

79. **Bridge to statewide themes (.** Together with SB 627 (Part 2), ACA 8 / Prop 50 completes the pattern: California **horizontally** asserted power over sister States/Congress and **vertically** commanded federal officers—two Article III seizures in ~30 days. That pattern is why the structural remedy (voidness, Young prophylaxis, **permanent** Eleventh-Amendment forfeiture for this controversy and related enforcement) is proportionate and necessary.

80. **Evidentiary housekeeping.** All quotations above are taken verbatim from the State's official channels *(Exs. A–D)* and will if necessary be supported by FRE 201 RJN entries with **Wayback** archival references and short **FRE 902(13)/ (14)** authenticity declarations at filing. *(URLs already on file for Exhibits A–D.)*

———

## X. ATTORNEY GENERAL INDEPENDENCE & APPEARANCE-OF-IMPAIRMENT; WAIVER BY CONDUCT; EVIDENCE MAP (ARLINGTON HEIGHTS / FRE 801(d) (2))

### A. Independence of the Attorney General; adoptive admissions; requested safeguards

81. **Sovereign client, not partisan client.** The Attorney General's client is **California qua California**, not the Governor, the Legislature, nor any party caucus. See Cal. Const. art. V, § 13; Cal. Gov't Code §§ 12511–12512 (AG is the State's chief law officer; duty to see that laws are uniformly and adequately enforced).

82. **Why independence matters here.** This case alleges apex assertions of power against (i) **Congress** (Elections Clause national standards), (ii) **Article III**

(exclusive interstate forum), (iii) **49 sister States** (superintendence/nullification), and (iv) the **federal Executive** (SB 627 commands to federal officers). When the political branches advance such claims, the AG's independence is at its apex.

83. **Public maxim adopted by the AG.** On **September 2, 2025**, the Attorney General publicly amplified Judge Breyer's maxim—"ignorance of the law is no excuse"—as the State's own messaging; on **September 17, 2025**, he proclaimed "Separation of Powers. The Rule of Law. Our Constitution is the foundation of our nation. We will not allow anyone to trample on it." (Preamble ¶¶ P2–P3.) Those are **adoptive admissions** binding on the State. FRE 801(d)(2)(B).

84. **Non-repudiation as adoption.** The AG did **not** repudiate the August admissions (Exs. A–C) or the September SB 627 framing (Ex. D). In context, that silence—coupled with public amplification of separation-of-powers slogans—operates as the State's own adoption of the posture challenged here. FRE 801(d)(2)(B), (D); *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001) (judicial estoppel prevents tactical reversals).

85. **Appearance-of-impairment (structural, not personal).** On information and belief, Assemblymember **Mia Bonta** (AG Bonta's spouse) is identified among **SB 627's** co-authors. Plaintiff alleges no wrongdoing; the point is structural: where the AG's household is tied to the measure challenged for regulating **federal officers**, independence concerns are acute. (Ex. D; see also ¶¶ 71–77, incorporated by reference.)

86. **What conflict-free looks like.** In a setting like this, a conflict-free AG would (i) promptly **disclaim** extraterritorial/supervisory claims to avoid party admissions; (ii) **screen** himself or designate conflict-free counsel for the sovereign client; (iii) advise political principals that State–State controversies require a **§ 1251(a)** application and State–United States controversies belong in **Article III court** (or Congress); and (iv) if necessary, file a **neutral declaratory** action to channel disputes to proper federal fora.

87. **Requested safeguard (narrow, practical).** Plaintiff respectfully requests a short declaration from the AG stating whether he will (a) continue personally with an **ethical screen** plus designation of conflict-free counsel for California qua California, or (b) **recuse** and permit independent counsel to appear for the sovereign client. This is not punitive; it is to ensure the sovereign's interests are actually presented.

88. **Cooper hierarchy is not optional.** *Cooper v. Aaron*, 358 U.S. 1 (1958), confirms that Supreme Court constitutional holdings bind state officials. SB 627's official messaging (Ex. D) describing a Supreme Court reversal as an "admonishment" underscores the need for conflict-free, hierarchy-faithful advice. (See ¶70, ¶121A.)

89. **Effect on evidence.** Given this posture, the AG's **non-repudiation** functions evidentially as the State's **adoptive admission** that the August–September positions are its own (FRE 801(d)(2)(B), (D)), and **estoppel** bars later "just rhetoric" pivots. *New Hampshire v. Maine*, 532 U.S. at 749–51.

**B. Waiver by conduct (conservative doctrine applied to apex acts)**

90.   **Standard.** A State's waiver of Eleventh Amendment immunity must be shown by "**the most express language** or by **overwhelming implications** from the text as leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); reaffirmed in *Atascadero* and *Feeney*.

91.   **No constructive waiver—but unmistakable course of conduct counts.** *College Savings Bank v. Florida Prepaid*, 527 U.S. 666, 680–82 (1999) (rejects "constructive" waiver; insists on **unequivocal** expression). Courts nonetheless find waiver where the **course of conduct** admits no other reasonable reading. *Feeney*, 495 U.S. 299, 306–07 (1990).

92.   **Litigation conduct rule (forum discipline).** *Lapides v. Board of Regents*, 535 U.S. 613, 619–21 (2002): a State that **chooses** a litigation forum (e.g., removal) cannot later wield immunity as a **sword-and-shield**.

93.   **Application to California's apex conduct.**
a. **Express words:** "**nullify congressional gains in Texas or any State**." (Ex. A.) "**They shot the first bullet ... in Texas and we're responding.**" (Ex. B.) "**Press Congress ... but until that occurs ... this measure.**" (Ex. C.)
b. **Unmistakable course of conduct:** Within ~30 days, California (i) pursued a **plebiscitary** remedy to adjudicate an **interstate** grievance (**§ 1251(a)** belongs exclusively to SCOTUS), and (ii) enacted **SB 627** commanding **federal officers**, bypassing the State–United States lane (**§ 1251(b)(2)** / Article III).
c. **No other reasonable reading:** These are not internal, intrastate uses of § 4 or neutral safety rules. They are **seizures** of Congress's, SCOTUS's, and the federal Executive's spheres—paired with admissions.

94.   **Scope of waiver recognized.** At minimum, waiver exists **for this controversy and related enforcement**—i.e., suits arising out of, or relating to, ACA 8 / Prop 50 and SB 627 and the admissions in Exs. A–D. See *Edelman*, *Atascadero*, *Feeney*, *Lapides*.

95.   **Why "forfeiture," not only waiver.** Beyond **waiver** for this controversy, the record justifies **permanent forfeiture in courts of the United States** because California has burned the **predicates** that justify immunity at all—coequal dignity, equal footing/comity, and fidelity to Article III's referee role (Hans; Alden; Hyatt). (See §§ VIII–IX; ¶¶ 76–79.)


**C. Evidence map — FRE 801(d)(2) categories and Arlington Heights factors (Exhibits A–D)**

96.   **Method.** For each Exhibit, Plaintiff identifies (1) the key **verbatim** language (≤ ~50 words), (2) the FRE 801(d)(2) **admission** category, and (3) the *Arlington Heights* **factor(s)** supported—sequence, departures, decision-maker statements, impact, historical background. Each is tied to pleaded paragraphs.

97.   **Exhibit A — Governor's official statement (Aug. 14, 2025).**
**Quote (core):** "We're giving voters a way to **fight back and nullify congressional gains in Texas or any State** that tries to 'rig' its maps."
**Admission:** 801(d)(2)(A) (party's own statement).

**Arlington Heights:** (i) **Decision-maker statements**; (ii) **Impact** (nationwide scope, "any State"); (iii) **Sequence** (initiation of plan).
**Used in:** ¶¶ 58–61, 65–68, 71–73, 75–76; 38, 51–53.

98. **Exhibit B — Governor's press remarks (Aug. 21, 2025).**
**Quote (core):** "**They shot the first bullet.** They took an action in **Texas** and **we're responding** to it ... not just rhetoric, but **action**."
**Admission:** 801(d)(2)(A).
**Arlington Heights:** (i) **Decision-maker statements**; (ii) **Sequence** (escalation to "action"); (iii) **Departure** (framing an interstate **controversy** but not seeking § 1251(a) leave).
**Used in:** ¶¶ 58, 63–64, 67, 71–73, 75–76.

99. **Exhibit C — Assembly floor statement (Aug. 2025).**
**Quote (core):** "We must all continue to **press Congress** to create a national system ... **But until that occurs**, fair representation for Californians cannot exist **without this measure**."
**Admission:** 801(d)(2)(D) (agent/employee statement on a matter within scope, during relationship).
**Arlington Heights:** (i) **Decision-maker statements**; (ii) **Sequence** (Congress named as proper actor; **State substitutes itself**); (iii) **Departure** (from Congress-only lane).
**Used in:** ¶¶ 58–61, 67–73, 75–76.

100. **Exhibit D — Senator's official SB 627 signing release (Sept. 20, 2025).**
**Quote (core):** "SB 627 **bans federal and local law enforcement, including ICE** ... and **requires officers to display their faces** ... when making arrests, conducting raids, or engaging in other official duties."
**Admission:** 801(d)(2)(D).
**Arlington Heights:** (i) **Decision-maker statements**; (ii) **Sequence** (shift from plebiscite to direct legislation aimed at federal operations); (iii) **Impact** (means-and-manner commands to federal officers); (iv) **Departure** (bypassing Article III State–United States lane).
**Used in:** ¶¶ 38–49, 53–57; 58 (pattern), 69–76.

101. **Attorney General amplifications (Sept. 2 & Sept. 17, 2025).**
**Quotes (core):** "Ignorance of the law is no excuse." / "Separation of Powers. The Rule of Law. Our Constitution is the foundation ... we will not allow anyone to trample on it."
**Admission:** 801(d)(2)(B) (adoptive admissions by public amplification; non-repudiation of Exs. A–D).
**Arlington Heights: Historical background/sequence** (posture after August admissions; confirms purpose and refusal to disclaim).
**Used in:** Preamble ¶¶ P2–P7; ¶¶ 52, 75, 83–89.

102. **Result under Arlington Heights.** Decision-maker statements + tight sequence + procedural departures + nationwide "impact" branding ("ALL 50 States") supply **purpose** evidence that is text-independent and legally operative.

See 429 U.S. at 267–68. The State cannot sanitize by pointing to sterile statutory text. (See ¶¶ 67–68, 70.)

### D. Voluntary cessation and recurrence risk (heavy burden the State cannot carry)

103. **Two apex moves in ~30 days.** August: **ACA 8 / Prop 50** (national nullification; interstate injury; § 1251(a) bypass). September: **SB 627** (direct commands to federal officers; State–United States bypass). (¶¶ 58–76; 38–57.)

104. **Same principals, same posture. Same Governor, same supermajority Legislature, same Attorney General**—and no repudiation of the extraterritorial/supervisory claims or of the SB 627 federal-officer commands. (¶¶ 51–52, 75, 83–89.)

105. **Laidlaw's standard.** Voluntary cessation moots nothing absent proof **"absolutely clear"** the conduct cannot reasonably be expected to recur. *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189–90 (2000). *City of Mesquite*, 455 U.S. 283, 289 (1982) (defendants cannot game jurisdiction by transient changes they remain free to remake).

106. **Application.** On these facts—paired apex measures, institutional continuity, non-repudiation, and public commitments—the State cannot meet Laidlaw's heavy burden. (¶¶ 51–52, 72–76, 103–104.)

### E. Evidentiary housekeeping; RJN and authentication

107. **RJN (FRE 201).** Plaintiff will request judicial notice of the **existence and content** of government-hosted materials for Exs. A–D (and AG posts) and will if necessary include **Wayback** archival citations and capture dates. See *Daniels-Hall v. NEA*, 629 F.3d 992, 998–99 (9th Cir. 2010); *Gerritsen v. Warner Bros.*, 112 F. Supp. 3d 1011, 1033–35 (C.D. Cal. 2015).

108. **Authentication (FRE 901, 902(13)/(14)).** Plaintiff will attach a short declaration authenticating URLs, timestamps, and true-and-correct copies (including file hashes if needed). The **same materials** are independently admissible as **opposing-party statements** under FRE 801(d)(2).

109. **Open Items log.** Any missing timestamps or transcript-cleanup items will if necessary  be bracketed **[PIN]** in-text and listed in an "Open Items" appendix, with proposed cures (e.g., specific Wayback captures, clerk-certified transcript excerpts).

### F. Remedy tie-back

110. **Conflict-free presentation order.** The Court may order the AG to declare the **screen/recusal** plan (¶87). This ensures the sovereign client is represented independently on structural questions (Article I/III/V; equal footing; intergovernmental immunity).

111. **Waiver recognized; forfeiture declared.** Based on the **express admissions** and **unmistakable course of conduct** (¶¶ 90–96), recognize **waiver** for this controversy and, given the destruction of immunity's predicates (¶¶ 76,

95), declare **permanent forfeiture** of Eleventh Amendment immunity **in courts of the United States** for controversies arising from or relating to this pattern.

112. **Young prophylaxis & declaratory allocation.** Enter **Ex parte Young** injunctions preventing (i) assertion of supervisory/"nullify any State" powers, (ii) bypass of § 1251(a), and (iii) enforcement of SB 627 against **federal officers**; and issue **declaratory allocation** confirming Congress-only national § 4 standards and SCOTUS-only interstate forum. (See ¶¶ 72–73, 56–57, 78.)

———

## XI. SUI GENERIS CONSTITUTIONAL BREACH; PROPORTIONAL REMEDY; COMPARATIVE PROPORTIONALITY

**Sui Generis Constitutional Breach**

113. **Unprecedented scope. No State—and no federal branch—has ever claimed what California now claims:** the authority to seize, regulate, nullify, or superintend powers expressly delegated to Congress (Art. I), to the Judiciary (Art. III), and to the Executive (Art. II), while simultaneously asserting dominion over the Elections-Clause powers of all forty-nine sister States. California's actions through **ACA 8 / Prop 50** and **SB 627** are thus *sui generis*—without parallel in the 230 plus-year history of the Republic. (See Exs. A–D; ¶¶58–76.)

114. **Beyond nullification or interposition.** Even nineteenth-century "nullification" and "interposition" theories—unlawful as they were—claimed only reactive State autonomy within a discrete field. **ACA 8 / Prop 50** and **SB 627** assert **universal supervisory power**: to legislate for **Congress** (second half of the Elections Clause), to adjudicate for the **Supreme Court** (§ 1251(a) controversies), and to **command federal officers** (Necessary & Proper / Art. I § 8 cl. 18; Article II Take-Care). There is no precedent, federal or State, for such comprehensive suzerainty. (¶¶63–69, 97–101.)

115. **Historical impossibility at the Founding and Admission.** Had any state delegation in 1787 in Philadelphia  proposed that a single State might seize dormant federal powers, overrule sister States' election laws, and dictate the conduct of federal officers, the proposition and their state would have been rejected as incompatible with the Union of co-equal sovereigns that was being formed by the Constitutional Convention. Also the State  of California itself in 1850 could not and would not have ever have been admitted  into Union by Congress under the Equal-Footing Doctrine asserting what it successors  175 years later have asserted. *Coyle v. Smith*, 221 U.S. 559 (1911); *Lessee of Pollard v. Hagan*, 44 U.S. (3 How.) 212. (¶¶126–127.)

**[Chisholm  and Hans Outrage vs. California's suzerainty—why the same logic and reasoning compels permanent forfeiture]**

115A. **What triggered the Eleventh—and then Hans.** The Eleventh

Amendment was ratified as a direct response to the *outrage* the People and the States felt after **a private outsider** sued a State in federal court without its consent in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419 (1793). A century later, *Hans v. Louisiana*, 134 U.S. 1 (1890), extended immunity beyond the Amendment's text to bar **a private insider** (a State's own citizen) from suing his State in federal court without its consent—grounded in dignity, equal footing, and the plan of the Convention.

115B. **Outrage vs. unthinkable.** Crucially, *Chisholm* and *Hans* prove that **private suits against States without their consent were not "unthinkable"**— they **happened**. They were condemned as **outrageous affronts** to state dignity and then addressed—first by **text** (the Eleventh) and then by **structure** (*Hans* and progeny). By contrast, **California's 2025 posture is what would have been unthinkable** at the Founding and at admission: a State claiming **suzerainty over ALL other sovereigns and Article III itself**—seizing the Supreme Court's exclusive interstate forum (Art. III § 2; 28 U.S.C. § 1251(a)), substituting itself for **Congress** under the Elections Clause "until Congress acts" (Art. I § 4), and exercising **Necessary & Proper** power over federal officers (Art. I § 8, cl. 18) while trenching on the **Take Care** duty (Art. II § 3).

115C. **The a-fortiori step is unavoidable. If mere exposure to a private suit justified (i) a constitutional amendment and (ii) extra-textual set of doctrinal expansions going on 135 years now with the latest being *Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485 (2019) ("Hyatt III") to preserve coequal dignity of States, then a State's assertion of supremacy over peer States, Congress, and the Supreme Court and the Federal Executive  compels the opposite structural consequence: permanent (not case-limited) forfeiture of extra-textual sovereign immunity, because California has torched the very predicates—coequal dignity, equal footing, and forum discipline—that justify that courtesy.**

115D. **No doctrinal escape hatch (the Hans fork is binary). Extra-textual sovereign immunity exists only because the US Supreme Court grounded and continues to ground it in structure—"plan of the Convention," equal footing, coequal dignity—not in the bare text of the Eleventh Amendment. *Hans v. Louisiana*, 134 U.S. 1 (1890); *Alden v. Maine*, 527 U.S. 706 (1999); *Franchise Tax Bd. v. Hyatt* ("Hyatt III"), 139 S. Ct. 1485 (2019). To deny forfeiture here while preserving that structural theory, Defendants (or any court) would have to explain why immunity was expanded to protect States from the lesser affronts in *Chisholm* and *Hans*—and even from the far more modest affront in *Hyatt III*—yet not forfeited when a State asserts suzerainty over Congress, the Supreme Court's exclusive forum, the federal Executive, and all sister States. There is no principled middle path that preserves *Hans* while excusing California's conduct.**

**115E. If structure controls, forfeiture follows (a fortiori). Under *Hans/ Alden/Hyatt*, immunity moves to preserve the constitutional structure; where structure requires, immunity yields. See also the plan-of-the-Convention "yield" cases: *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006) (bankruptcy); *PennEast Pipeline Co. v. New Jersey*, 594 U.S. ___ (2021) (federal eminent domain); *Torres v. Texas DPS*, 597 U.S. ___ (2022) (war powers). A fortiori, when a State repudiates the structure itself—here by seizing Article I § 4's national role, Article III § 2 / 28 U.S.C. § 1251(a)'s exclusive interstate forum, and Article I § 8, cl. 18's federal-officer domain while trenching on Article II's Take-Care duty—extra-textual sovereign immunity is permanently forfeited. California has burned the very predicates (coequal dignity, equal footing, forum discipline) that justify the courtesy.**

**115F. If structure is abandoned, the Eleventh's text governs—and this suit proceeds. The extra-textual edifice since *Hans* stands or falls with the Court's structural method. If Defendants urge (or a court elects) to discard that method to save California here, what remains is the bare text of the Eleventh Amendment, which by its terms bars only suits "by Citizens of another State, or by Citizens or Subjects of any Foreign State." Plaintiff is neither; he is a California resident and a United States citizen. On that textual baseline, in state residents who are also US citizens may directly sue their own State in federal court without its consent—Plaintiff included.**

**115G. Rule 11(b)(2) trilemma; no ad hoc carve-out; The State of California's forthcoming Rule 12(b)(6) and or 12(b)(1) Motions to Dismiss (MTD) this complain must be denied either way. Rule 11(b)(2) candidly frames the choices: (1) apply *Hans*'s structural reasoning and recognize permanent forfeiture of extra-textual immunity (predicates burned by California's admissions and apex acts); or (2) abandon the structural predicates and revert to the Eleventh's text, which likewise permits this suit; or (3) attempt an unexplained exception preserving immunity in the teeth of the premises that created it—irreconcilable with *Hans, Alden, Hyatt III, Katz, PennEast,* and *Torres*. Stare decisis forecloses (3). Standing and justiciability do not rescue Defendants: individuals vindicate structural limits to protect personal liberty, *Bond v. United States* ("*Bond I*"), 564 U.S. 211, 222–24 (2011); *Bond II*, 572 U.S. 844, 857–60 (2014); pre-enforcement structural injury is cognizable, *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 490–91 (2010); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196–2207 (2020); and voluntary-cessation mootness fails absent "absolutely clear" non-recurrence, *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189–90 (2000)—an impossible showing on this record. Bottom line: whether via structure (forfeiture) or text (Eleventh inapplicable), there is no doctrinal path to dismissal that preserves 135 years of precedent while salvaging California's position.**

**115I. Admission discipline confirmed by the Utah precedent.** Congress's admission power and the federal government's plenary authority over territories (U.S. Const. art. IV, § 3, cl. 2) have historically operated to **contain** any local claim of supremacy over the Union's structure. When the Utah Territory's leadership under Brigham Young behaved as a de facto rival sovereign, President Buchanan dispatched the **Utah Expedition (1857–58)** to enforce federal supremacy and install a new governor—**not expulsion, but federal containment** until territorial governance conformed to national structure. Statehood did not follow until decades later (Utah, 1896), and only after sustained federal oversight.

**115J. Judicial confirmations of federal supremacy in territories.** The Supreme Court repeatedly upheld Congress's and the Executive's power to discipline territorial assertions of sovereignty: **Reynolds v. United States, 98 U.S. 145 (1878)** (upholding federal criminal law in the territory notwithstanding religious objection); **Murphy v. Ramsey, 114 U.S. 15 (1885)** (approving congressional regulation of territorial suffrage/incidents of governance); and **Late Corp. of the Church of Jesus Christ of Latter-Day Saints v. United States, 136 U.S. 1 (1890)** (sustaining congressional dissolution of a territorial corporation and seizure of property to vindicate federal supremacy). The lesson is structural, not topical: where a sub-federal polity claims supremacy over the Union's constitutional order, **federal authority prevails** until parity is restored.

**115K. Parity with California's 2025 assertions.** California's posture is **worse** than the Utah-era conflict in kind and scale: it claims suzerainty over (i) **Congress's** exclusive national role under the **second half of the Elections Clause** (Art. I § 4), (ii) the **Supreme Court's exclusive interstate forum** (Art. III § 2; 28 U.S.C. § 1251(a)), and (iii) **Congress's Necessary & Proper authority** over federal officers (Art. I § 8, cl. 18) while trenching on the **Take Care** duty (Art. II § 3). If a territorial claim of lesser scope warranted federal containment before statehood, then a **State's** broader claim against all three federal branches and forty-nine coequal States warrants a structural judicial remedy now.

**115L. Equal-footing logic sharpened by Utah. Equal footing** is a parity the Union confers **after** a polity accepts the federal structure as-is. A State that **repudiates** that structure (by asserting supervisory, nullifying, or co-legislative powers over Congress, the Supreme Court, the Executive, and sister States) **forfeits the courtesy predicates**—coequal dignity and comity—on which extra-textual sovereign immunity rests. The Utah precedent shows what happens **before** statehood when parity is denied; the proportionate **post-statehood** analogue is judicial recognition of **permanent forfeiture** of extra-textual immunity.

**115M. Proportionality of the requested remedy.** The Court is not asked to "occupy" a State. It is asked to apply the same **structural logic** the political branches applied to the Utah Territory. Here, containment is purely juridical—**void-**

**ab-initio declarations, Ex parte Young prophylaxis, and permanent forfeiture of extra-textual sovereign immunity**—the least intrusive means to restore constitutional equilibrium where a State has claimed supremacy over every other sovereign and Article III itself. Or to put it more succinctly, the State of California today is behaving as if it's Brigham Young's Utah Territory — **except it's already a state, and the only constitutional containment available is forfeiture of its extra-textual immunities.**

116. **Structural consequence—permanent forfeiture.** Because this conduct is unique in kind and magnitude, ordinary notions of waiver/abrogation are inadequate. The result is a *sui generis structural forfeiture*: by asserting dominion over coordinate sovereigns and federal branches, California has twice in a 30 day span vacated  and repudiated the **coequal status** that sustains Eleventh-Amendment immunity in **courts of the United States, first by the most permanent and apex unilateral act the State of California can undertake in voting on August 21st 2025 by super majoritarian  2/3rds vote in both the Assembly and Senate to refer an ACA(Assembly Constitutional Amendment) 8/Prop 50 to the electorate of the state for ratification and second by "simple" state statue in SB 627 signed into law  on September 20th 2025 by Governor Newsom**. The proportionate remedy is to recognize their voluntary apex acts of structural forfeiture twice over and restore structural equilibrium by declaratory and injunctive relief. (Hans; Alden; Hyatt; ¶¶90–96, 110–112.)

**Proportional Remedy — Structural Forfeiture Without Expulsion**
117. **Available structural responses.** A State that repudiates the constitutional compact—claiming power over all three federal branches and all sister States—places itself outside the parity that sustains co-equality. The theoretical responses would be: (1) **expulsion** from the Union, or (2) **federal receivership/reconstruction** until fidelity is restored. Option (1) is foreclosed; the Union is **indestructible**. *Texas v. White*, 74 U.S. (7 Wall.) 700 (1869). Option (2) would itself threaten the balance the Court must preserve.
118. **Proportional, lawful alternative.** Plaintiff therefore seeks the least intrusive, structurally coherent remedy: recognition that, having repudiated the plan of the Convention and equal-footing parity, California must **appear as any private litigant** in federal court—subject to ordinary process, discovery, judgment and damages—**without** the special cloak of sovereign immunity. This restores symmetry without altering California's territorial governance or lawful internal autonomy. (¶¶100–101, 111–112.)
119. **Light but sufficient.** Relative to the magnitude of the breach—asserting suzerainty over Congress, the Judiciary, the Executive, and forty-nine States—the requested relief is modest. It neither punishes nor disenfranchises; it merely withdraws a **privilege that cannot coexist with its negation**. California remains a State in the Union, governed by its laws and officers, but stands before the Court

on the same footing as any private litigant whose acts contravene the Constitution. (Hyatt; ¶¶121–124.)

120. **Structural coherence preserved.** This remedy preserves all principles:

(a) the Union remains **perpetual** (*Texas v. White*);

(b) **federal supremacy** is reaffirmed; and

(c) **state equality** is restored by removing an immunity no longer justified by parity.

It vindicates Article III's exclusive jurisdiction and the plan of the Convention while imposing only the minimum consequence structural logic demands. (¶¶110–112.)

**Comparative Proportionality — Light Remedy for a Sui Generis Breach**

121. **Relative gravity.** Measured against California's conduct, the requested relief is light. **ACA 8 / Prop 50** and **SB 627** together mark the first instance of any sovereign—State or Federal—claiming authority to **seize/supervise all three federal branches** and the **Elections-Clause** powers of all sister States. No precedent approaches this vertical-and-horizontal usurpation. (¶¶63–69, 97–101.)

122. **Plaintiff's restraint.** Plaintiff does not seek expulsion, receivership, or punishment. He seeks only the **structurally inevitable** consequence: when a State renounces parity and asserts suzerainty over the Union, it mist litigate without sovereign immunity **in courts of the United States.** That is the narrowest remedy restoring the constitutional geometry while leaving internal self-government intact. (¶¶117–120.)

123. **Structural minimalism.** The declaration/injunction requested merely recognizes what California's **own acts** accomplish: **permanent forfeiture** of Eleventh-Amendment immunity in courts of the United States. California remains a State; its officers remain; its statutes remain subject to ordinary supremacy constraints. Only the **procedural privilege—a structural courtesy amongst equals in sovereign dignity**—is withdrawn. (Hans; Alden; Hyatt; ¶¶95, 118–120.)

124. **Light in law and equity.** Given California's asserted dominion over Congress, the Judiciary, the Executive, and every sister State, recognizing forfeiture is **judicial modesty**, not aggression. It protects Article III, honors *Texas v. White*, and restores coequal dignity by removing a privilege **logically and structurally incompatible with the State's own claims.** (¶¶110–112.)

**Structural Seizures of Articles I & III — and a De Facto Article V Usurpation (with Exhibit Admissions)**

125. **Overview.** California's August–September 2025 conduct does not merely "press the limits." It **reassigns** federal powers the Constitution vests **exclusively** in Congress and in this Court, then adjudicates an **interstate** controversy by **state ballot**—a de facto amendment of the U.S. Constitution **without Article V**. (See Exs. A–D; ¶¶58–76; 96–101.)

126. **Admissions posture.** These positions are not inferred; they are **verbatim admissions** by State decision-makers, admissible as opposing-party statements (FRE 801(d)(2)) and probative of **purpose** under *Arlington Heights*: (A)

Governor's official statement (Ex. A); (B) Governor's press remarks (Ex. B); (C) Assembly floor statement (Ex. C); (D) Senator's official SB 627 release (Ex. D). (¶¶97–101.)

### A. Article I § 4, cl. 1 — California substitutes itself for Congress

127. **Text (second half).** "… but the Congress may at any time by Law make or alter such Regulations…."

128. **Self-confessed substitution.** Assemblymember Lowenthal concedes Congress is the proper national actor—then declares California will exercise that **federal override** itself **"until Congress acts":** "We must all continue to press Congress … **But until that occurs,** fair representation for Californians cannot exist **without this measure.**" (Ex. C.) That is not California using its own "each State shall prescribe" authority; it is California occupying the **"but the Congress may"** seat. (¶¶63–66, 98–99.)

129. **Express nationwide nullification claim.** The Governor promises to "**give voters a way to … nullify congressional gains in Texas or any State** that tries to 'rig' its maps.'" (Ex. A.) That asserts **superintendence** over sister States' § 4 prerogatives—the province of **Congress** under the Elections Clause's second half. (¶¶63–65, 97.)

130. **Effect.** Functionally, California reads the Clause: "but the **Congress or California** may at any time …"—a reallocation of federal power **without Article V.** (¶¶125–126.)

### B. Article III § 2 & 28 U.S.C. § 1251(a) — California seizes this Court's exclusive interstate forum

131. **Text/statute.** The judicial power extends "to **Controversies between two or more States**"; Congress codifies the Supreme Court's **exclusive** original jurisdiction at **§ 1251(a).**

132. **Interstate injury declaration.** California publicly framed **Texas** as injuring **California:** "**They shot the first bullet … in Texas and we're responding** … not just rhetoric, but action." (Ex. B.) Lowenthal adds: "**Texas …** will **disenfranchise Californians.**" (Ex. C.) (¶¶63–65, 98–99.)

133. **Bypass of § 1251(a).** Having alleged a State-v-State injury, California did **not** seek leave in the Supreme Court; it chose **self-help** via California's ballot/ACA. Plaintiff pleads precisely that seizure of the **exclusive** forum. (¶¶67–69.)

134. **Effect.** California converts a **Supreme-Court-only** case into a **California initiative,** adjudicating Texas inside California's political process. (¶¶67–69.)

### C. Article I § 8 (Necessary & Proper; regulation of federal officers) — SB 627 asserts co-legislative power over the federal Executive

135. **Text (capstone).** Congress may "**make all Laws which shall be necessary and proper for carrying into Execution … all other Powers vested … in any Department or Officer of the United States.**"

136. **Direct command over federal agents.** Ex. D states SB 627 "**bans federal and local law enforcement, including ICE** ... and **requires officers to display their faces** ... when making arrests, conducting raids, or engaging in other **official duties.**" That is not regulation of State officers; it is a **command to federal officers** performing federal tasks—an assertion of Congress's Necessary & Proper authority and an intrusion on Article II's **Take-Care** function. (¶¶51–55, 100.)

136A. **Anti-commandeering baseline (federal cannot conscript States).** The Supreme Court's anti-commandeering rule bars Congress and the federal Executive from ordering state legislatures or executive officers to administer or enforce federal programs. *New York v. United States*, 505 U.S. 144, 161–69 (1992); *Printz v. United States*, 521 U.S. 898, 925–35 (1997); *Murphy v. NCAA*, 584 U.S. 453, 468–73 (2018). The Constitution "confers upon Congress not plenary legislative power but only certain enumerated powers," and "even where Congress has the authority... it lacks the power directly to compel the States to require or prohibit" conduct. *Murphy*, 584 U.S. at 468–69 (cleaned up).

136B. **A fortiori—no State may commandeer other States' officers.** If the federal government itself—armed with enumerated powers and supremacy—cannot conscript state executive officers, it follows a fortiori that **one State** cannot conscript the officers of **another State**. Equal footing and horizontal sovereignty preclude California from dictating duties to "out-of-state" officers. See *Hyatt III*, 139 S. Ct. at 1497–99 (dignity/ parity across States); Dormant Commerce/ extraterritoriality principles likewise forbid a State from projecting coercive regulation to govern conduct outside its borders. See *Healy v. Beer Inst.*, 491 U.S. 324, 336–37 (1989).

136C. **Intergovernmental immunity—States may not regulate federal officers.** SB 627's command to "federal... law-enforcement officers" directly regulates and obstructs federal functions—something States cannot do. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427–36 (1819); *Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920) (State may not require license of a federal postal driver); *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189–90 (1956) (state licensing may not veto federal procurement); *Arizona v. United States*, 567 U.S. 387, 394–97, 406–15 (2012) (preemption/ interference with federal immigration enforcement). State interference with federal officers is also incompatible with federal custody/ authority protections. See *Tarble's Case*, 80 U.S. (13 Wall.) 397, 411–12 (1872).

136D. **SB 627 is extraterritorial and void on its face.** By its own terms, SB 627 "prohibits local, federal, **and out-of-state** law-enforcement officers...," with no territorial limitation. Read as written, it (i)

**commandeers** other States' officers, which no sovereign may do; (ii) **regulates** federal officers and those "acting on behalf of" federal agencies, violating intergovernmental immunity; and (iii) projects California's will **beyond California's borders**, offending equal footing and the extraterritoriality bar. Such assertions of power are ultra vires and **void ab initio**. *Norton v. Shelby County*, 118 U.S. 425, 442–43 (1886). (See also ¶¶ 135–139.)

136E. **Structural consequence.**
Anti-commandeering (which limits even Congress) and intergovernmental immunity (which protects the federal Executive) underscore the magnitude of California's claim: SB 627 asserts powers **greater** than the federal government possesses and **over** sovereign equals. That posture repudiates the parity and forum-discipline predicates that justify extra-textual state immunity. Under *Hans/ Alden/Hyatt*, the same structural method that expanded immunity compels the **inverse result here—permanent forfeiture.** (Cross-refs ¶¶ 113–116, 141–144.)

**D. Article V — de facto amendments without constitutional process**
137. **Article V's exclusivity.** Only Congress (and the States collectively) can alter the **allocation** of federal power. A single State may not unilaterally: (i) insert itself into Art. I § 4 to act **"until Congress acts,"** (ii) seize Art. III's **§ 1251(a)** forum by state ballot, or (iii) exercise Art. I § 8 **"necessary and proper"** authority over federal officers. (¶¶125–136.)
138. **Dual-front usurpation (plus one).** California's admissions show simultaneous edits:
(a) **Elections Clause rewrite** — "but the **Congress or California** may alter such Regulations." (Exs. A, C.)
(b) **Judicial-power rewrite** — controversies "between two or more States" may be resolved by **California** itself rather than in this Court. (Exs. B, C.)
(c) **Necessary-and-Proper rewrite** — "Congress **or California** may make laws carrying federal officers into execution." (Ex. D.) (¶¶127–136.)
139. **Conclusion under Article V.** These are not ordinary preemption disputes; they are functional **amendments** to Articles I and III (and the Supremacy/Take-Care architecture) **without Article V**. No State may alter **who** holds federal power by statute or initiative. (¶¶125–138.)

**E. Evidentiary posture — FRE 801(d)(2) admissions and Arlington Heights purpose**
140. **Exhibit A** (Governor's @CAgovernor statement) — 801(d)(2)(A); intent to **"nullify ... in Texas or any State."**
**Exhibit B** (Governor's press remarks) — 801(d)(2)(A); interstate hostility: **"They shot the first bullet ... in Texas ... we're responding."**
**Exhibit C** (Assembly floor) — 801(d)(2)(D); **"press Congress ... But until that occurs ... this measure,"** plus **"Texas ... will disenfranchise Californians."**
**Exhibit D** (SB 627 official release) — 801(d)(2)(D); **"bans federal ... including ICE**

... **requires** officers to display their faces during **official duties.**"
(See ¶¶96–101; 127–136.)

### F. Structural consequences — Equal Footing & Sovereign-Immunity forfeiture

141. **Equal-footing collapse.** A State asserting supervisory/nullification power over its peers (**"Texas or any State"**) repudiates the horizontal parity that justifies Eleventh-Amendment comity. (Hyatt; Coyle; Pollard; ¶¶115–116, 121–124.)

142. **Plan-of-the-Convention logic in reverse.** The same dignity reasoning that **expanded** immunity (Hans; Alden; Hyatt) compels the inverse when a State claims **superiority**: immunity is a courtesy among **equals**, not a shield for a self-declared **super-sovereign**. (¶¶116, 118–120.)

143. **Per se structural injury; void ab initio.** Acts taken without constitutional authority are **void**. *Norton v. Shelby County*, 118 U.S. 425, 442–43 (1886). Here, the **assertion of power itself**—Congress's § 4 power; this Court's § 1251(a) forum; Congress's § 8 power over federal officers—is the injury, destroying predicates of any claim to immunity. (¶¶69–70, 130B–130F.)

144. **Relief implication.** Because the State's measures reallocate federal powers and bypass this Court's exclusive forum, the calibrated remedy is: (i) **declaration** of structural violations and **voidness**; (ii) **permanent forfeiture** of Eleventh-Amendment immunity in **courts of the United States**; and (iii) targeted **Ex parte Young** injunctions to bar enforcement and forum-bypass. (¶¶110–112; Counts VIII–XI.)

### Capstone sentence (for Prayer / proposed order).

145. **Finding.** By its own admissions (Exs. A–D) and enactments (**ACA 8 / Prop 50; SB 627**), California has substituted itself for **Congress** under Article I § 4, seized this Court's **exclusive** interstate forum under Article III § 2 / **§ 1251(a)**, and exercised **Congress's** Article I § 8 authority over federal officers—a de facto amendment of the U.S. Constitution **without Article V**; accordingly, the measures are **void ab initio** and California's **Eleventh-Amendment immunity is permanently forfeited in courts of the United States**.

### Evidentiary Architecture: Party Admissions, Purpose, and Inability to Moot (abridged tie-back)

146. **Not argument; proof.** Plaintiff proceeds largely by **verbatim** quotes of State officials (Exs. A–D) offered as non-hearsay party admissions (FRE 801(d)(2)) and direct purpose evidence (*Arlington Heights*). The Court need not infer hidden meanings; the State declared what it was doing and acted accordingly. (¶¶96–101.)

147. **No "the text doesn't literally say that" defense.** *Arlington Heights* forbids sanitizing purpose by pointing to sterile text where official statements announce the intended legal effect. (¶¶98–102.)

148. **Rucho & Texas v. Pennsylvania** foreclose California's theory: only **Congress** may set national § 4 rules; no State has a cognizable interest in

another State's election administration. California claims both. (¶¶64–66.)

149. **Hyatt magnifies the affront.** If one plaintiff's suit in a sister court is an affront to dignity, a State's assertion of **superintendence** over **"any State"** is a fortiori worse—supporting forfeiture. (¶¶119–124.)

150. **Article V backstop jumped.** California's moves are functional **amendments** without Article V, reassigning who holds federal power. (¶¶137–139.)

151. **Laidlaw's heavy burden not met.** Two apex acts in ~30 days, same principals, no repudiation. The State cannot make it "absolutely clear" the behavior will not recur. *Laidlaw*, 528 U.S. at 189–90; *City of Mesquite*, 455 U.S. at 289. (¶¶103–106.)

152. **AG structural incapacity confirms recurrence.** Institutional ties to SB 627's authorship and non-repudiation make genuine reversal **implausible**, reinforcing *Laidlaw*'s conclusion. (¶¶81–89, 103–106.)

153. **Requested findings (streamlined).**

(a) **Declaration (Structure):** ACA 8 / Prop 50 and SB 627, with official admissions, are **void** as de facto amendments to Articles I & III without Article V.

(b) **Exclusive Forum:** Any State-v–State controversy must be presented by leave to the Supreme Court under **§ 1251(a)**; California may not adjudicate it by initiative/statute.

(c) **Pre-election Relief (Prop 50):** Enjoin certification/counting or legal effect of Prop 50; preserve administration (avoid **Purcell**) while preventing structural injury.

(d) **Intergovernmental Immunity (SB 627):** Enjoin enforcement against **federal officers** and those acting for them; declare unconstitutional/preempted as applied.

(e) **Permanent Forfeiture:** Hold that California's Eleventh-Amendment immunity is **permanently forfeited in courts of the United States.**

———

## XII. ACA 8 / Prop 50 — Text, Branding, Constitutional Effects, and Requested Relief

154. **Overview & timeline.** Between **August 14–21, 2025**, California's apex officials announced and advanced a constitutional amendment (**ACA 8 / Prop 50**) branded to operate across **"ALL 50 States."** The Governor's **Aug. 14** announcement promised to "**give voters a way to ... nullify congressional gains in Texas or any State**"; the **Aug. 21** press remarks framed **Texas** as injuring **California** ("They shot the first bullet ... in Texas and we're responding") and pledged **action** rather than rhetoric; the Assembly floor statement admitted California would **stand in for Congress** "until [Congress] acts." (Exs. A–C; see ¶¶127–133.)

155. **Branding as purpose evidence.** The **"ALL 50 States"** branding is not flourish; it is **direct purpose evidence** under *Arlington Heights*. It identifies a **national supervisory objective**: to police and **nullify** sister-States' Article I, § 4 choices and to occupy the **second half** of the Elections Clause ("**but the**

Congress may ..."). (¶¶127–130.)

156. **Elections Clause substitution (second-half occupation).** ACA 8 / Prop 50 expressly **substitutes California for Congress**: "We must all continue to press Congress ... **But until that occurs,** fair representation ... **cannot exist without this measure.**" (Ex. C.) Under **Rucho,** national standards belong to **Congress,** not States or courts; California's own words concede this and then **usurp** Congress's dormant role. (¶¶64–66, 127–130.)

157. **Exclusive original jurisdiction bypass.** California **declared a State–State controversy** ("Texas ... will disenfranchise Californians"; "They shot the first bullet ... in Texas") and then **bypassed** the Supreme Court's **exclusive** original forum, **28 U.S.C. § 1251(a)**—choosing **self-help** by plebiscite instead of seeking leave in the only court that may hear such a case. (¶¶131–134.)

158. **Arlington Heights factors (ACA 8 / Prop 50).**

1. **Sequence:** Within a week, California moved from national "nullification" talk to ballot placement.

2. **Departures:** California attempted to adjudicate an interstate controversy by **state ballot,** not by **§ 1251(a)** application.

3. **Contemporaneous statements:** Officials **announced** the intended extraterritorial effect, then **ratified** it with apex action.

4. **Impact:** The measure is designed to **alter national partisan control** by **overriding** other States' § 4 choices. (¶¶32I–32M, 146–152.)

159. **Purcell-safe pre-election relief.** Because the **structural injury** is the measure's **operation and certification,** the Court can tailor relief consistent with **Purcell** principles: (a) **enjoin certification and legal effect** of Prop 50 while allowing ordinary election administration to proceed; (b) **preserve ballots** administratively but **bar** counting/use; (c) order **neutralizing ballot language** if needed to avoid voter confusion; (d) **decide merits promptly** to guide officials. (¶153(c).)

160. **Declaratory allocation (Prop 50).** Declare that California **may not** (i) **occupy** Congress's second-half Elections-Clause role, (ii) **police/nullify** other States' § 4 exercises, or (iii) **adjudicate** interstate controversies inside California's political process. See **Rucho, Texas v. Pennsylvania; § 1251(a).** (¶¶64–66, 131–134, 153(b).)

161. **Judicial estoppel & adoptive admissions.** After **publicly** embracing "ignorance of the law is no excuse" and "Separation of Powers ... cannot be trampled," Defendants may not recast the Prop 50 record as "mere rhetoric." *New Hampshire v. Maine;* FRE 801(d)(2). (P2–P7; ¶¶32A–32H.)

162. **Equal footing → forfeiture.** Prop 50's claim to **superintend** other States negates the **coequal dignity** predicate of sovereign immunity. That predicate is structural, not transactional; its destruction compels **permanent forfeiture** of Eleventh-Amendment immunity in **courts of the United States.** (¶¶115–116, 141–145.)

163. **Requested orders (Prop 50).**
(a) **Void ab initio** declaration;
(b) **Injunction** prohibiting certification/use/effect;
(c) **Declaratory allocation** confirming Congress's exclusive national role under Art. I, § 4 (second half) and the Supreme Court's **exclusive** § 1251(a) forum;
(d) **Young** prophylaxis barring future attempts to revive the same extraterritorial posture. (Counts I–II, IV, XI; ¶¶143–145, 153.)

164. **Severability & savings.** Nothing herein prevents California from (i) setting **its own** internal § 4 rules; (ii) **petitioning Congress** to legislate national standards; or (iii) **seeking leave** under § 1251(a) if it believes it has an actionable interstate claim. The bar is on **impersonating Congress** or **seizing** the Supreme Court's docket. (¶¶156–160.)

165. **No merits refuge in statutory text.** *Arlington Heights* forecloses a defense that "the text doesn't literally say that." The **purpose and operation** announced by decisionmakers—and ratified by apex action—control. (¶¶146–150.)

166. **Open Items [notice].** To the extent official ballot numbers or captions changed during proofing, Plaintiff will file a short FRE 901/902 declaration attaching final Secretary of State materials and **Wayback** captures. (See RJN ¶¶107–112; URLs to be listed at ¶201 et seq.)

167. **Relief preserves election administration.** The requested remedies **do not** halt polling or ordinary administration; they **prevent** giving legal effect to an ultra vires **interstate** adjudication and **national** override. (¶159.)

168. **Proportionality to structure.** Because **expulsion** is foreclosed (*Texas v. White*), voidness plus **permanent forfeiture** and **Young** prophylaxis are the **least intrusive** tools that restore the constitutional geometry. (¶¶117–124.)

169. **Record discipline & spoliation.** Defendants must preserve drafts, messaging, legal analyses, and ballot-label workups for Prop 50; these materials are probative of **purpose** and **admissions**. (¶3; ¶32F–32H.)

170. **Table-of-Authorities note.** Authorities keyed to Prop 50 include **Rucho, Texas v. Pennsylvania, Mississippi v. Louisiana, Marbury, Cooper**, and the equal-footing line (**Coyle, Pollard**); *Purcell* is flagged for election-timing tailoring in the proposed order.

## XIII. SB 627 — Intergovernmental Immunity & Necessary-and-Proper (Deep Dive)

171. **On-duty command to federal officers (verbatim).** SB 627 "**bans federal and local law enforcement, including ICE, from wearing ski masks and similar extreme masks**" and "**requires officers to display their faces** ... when making arrests, conducting raids, or engaging in other **official duties**," subject to narrow exceptions. (Ex. D.) The law's **target** and **operational verbs** reach **federal** agents **while performing** federal tasks. (¶¶135–136.)

## XII-A. Voter Exposure Risk & DOJ Referral (Civil Case; No Criminal Allegation)

**171A. Civil posture; no accusation.** Plaintiff does **not** allege criminal conduct by any voter or official. This is a **civil** action seeking structural declaratory

and injunctive relief. Any criminal-law questions are referenced solely to justify Plaintiff's **requested referral to the U.S. Department of Justice** for independent review (see Count XII / Prayer).

**171B. Ratification mechanism that conscripts voters into a federal role.** Under California's constitution, **ACA 8 / Prop 50** could not take effect without **voter ratification.** By publicly declaring that California would (i) **"nullify ... in Texas or any State"** (Ex. A), (ii) **occupy Congress's** Elections-Clause override **"until [Congress] acts"** (Ex. C), and (iii) **adjudicate** an interstate controversy with **Texas** inside California's ballot process (Exs. A–C), the State **placed millions of voters in the position of purporting to exercise powers the federal Constitution assigns to **Congress** and the **Supreme Court**. That design risks **misleading** voters into believing a State ballot may lawfully **perform federal functions**.

**171C. "My State said I could" is no defense to federal law.** State authorization does not immunize conduct from federal law or federal supremacy. See *Cooper v. Aaron*, 358 U.S. 1, 18–20 (1958) (state officers are bound by the Supreme Court's constitutional holdings); *Ableman v. Booth*, 62 U.S. (21 How.) 506, 523–26 (1859) (state tribunals cannot obstruct federal law); *Testa v. Katt*, 330 U.S. 386, 391–94 (1947) and *Howlett v. Rose*, 496 U.S. 356, 367–75 (1990) (state law cannot nullify federal rights and duties); *Gonzales v. Raich*, 545 U.S. 1, 29–32 (2005) (state marijuana policy provides no defense to federal enforcement). California cannot lawfully **deputize** its electorate to do what the Constitution reserves to federal institutions.

**171D. Illustrative federal-criminal exposure risks (for DOJ review only).** Without alleging wrongdoing, Plaintiff identifies **potential exposure** the ballot design could create if actors proceed under a mistaken belief that a State may **act as** a federal organ:

1.    **18 U.S.C. § 912 (False personation of a United States officer)** — criminalizing falsely assuming or pretending to be a federal officer and **acting as such**. While **voting** is not personation, a State-engineered scheme that invites participants to **exercise Congress's or the Supreme Court's own functions** (e.g., "nullify" other States' federal election outcomes, or bypass the Supreme Court's exclusive interstate forum) risks **confusion** about acting "as the United States."

2.    **18 U.S.C. § 371 (Conspiracy to defraud the United States)** — under *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924), the statute reaches conspiracies that **impair, obstruct, or defeat** lawful functions of the federal government by "deceit, craft or trickery, or at least by means that are dishonest." A State-sponsored framework that purports to **replace** Congress's national Elections-Clause role or **evade** 28 U.S.C. § 1251(a)'s exclusive Supreme Court forum raises **colorable** concerns for federal review if anyone were to act on those claims.

3.   **18 U.S.C. § 241 (Conspiracy against rights)** — where actions aim to **nullify** other States' lawful election arrangements or congressional representation, federal civil-rights exposure can be implicated depending on intent and effect. Plaintiff makes **no allegation** that any voter or official committed such an offense; the point is that **California's design** invites confusion about the **lawful locus of power**, warranting DOJ scrutiny.

**171E. Structural analogy, not accusation.** Just as **Confederate**-era state assurances could not legalize defiance of federal law (*Texas v. White*, 74 U.S. (7 Wall.) 700, 725–26 (1869)), and just as California's **state** cannabis permissions could not bar **federal** CSA enforcement (*Raich*, 545 U.S. at 29–32), "**our State says we can**" cannot **license** Californians to perform **federal** constitutional functions. The **ballot-box** form does not change the **separation-of-powers** substance.

**171F. Requested prophylaxis to protect voters.** To **avoid exposing** voters to any uncertainty or perceived federal risk:
(a) **Declare** that California cannot use a State ballot to **occupy Congress's** Elections-Clause override, to **adjudicate** interstate controversies reserved to the **Supreme Court**, or to **superintend** sister States' Art. I, § 4 prerogatives;
(b) **Enjoin** certification, counting, or legal effect of Prop 50 (while allowing ordinary election mechanics to proceed), and **neutralize** any ballot language implying federal effect;
(c) **Refer** the record to DOJ for independent review of any federal-interest or exposure concerns (Count XII).

**171G. Spoliation & RJN.** Defendants must **preserve** all ballot-label drafting, voter-guide text, press scripts, and legal analyses concerning ACA 8 / Prop 50. Plaintiff will supply **Wayback** captures and official-URL attachments in the RJN (¶¶107–112; URLs to be listed at ¶201 et seq.).

**171H. Equity and minimalism.** These remedies **do not** criminalize or chill voting. They **protect** voters from being **conscripted** into an ultra vires structure and restore the **federal** allocation of power so that California's electorate is never misled into thinking it may lawfully **act as** Congress or the Supreme Court.

172.   **Intergovernmental-immunity rule.** A State may not **regulate** or **discriminate against** the United States or its instrumentalities in the performance of federal functions absent **unmistakably clear** congressional consent. *McCulloch v. Maryland*; *Johnson v. Maryland*; *Hancock v. Train*; *Goodyear Atomic*; *Tarble's Case*; see also **United States v. Washington**, 596 U.S. ___ (2022) (invalidating state rule that singled out federal operations/contracting).

173.   **Not "traffic laws."** The Governor's traffic-law analogy (made on September 20 2025 post passage of SB 627) fails. **Traffic rules** applied to federal

employees **off-duty** as ordinary motorists are classic exercises of **reserved police power**. By contrast, **SB 627** regulates **how** federal officers **perform** federal duties —**on duty, in the field**—which is **categorically barred** under *Johnson* and related cases. (User's framing adopted; compare ¶¶51–55.)

174. **Immigration preemption overlay.** Immigration enforcement is a sphere of **plenary federal** control. *Arizona v. United States*; *Hines v. Davidowitz*. SB 627's **on-duty** equipment/identification commands are **operational** dictates to federal agents, not neutral rules of general applicability incidentally touching the federal government. (¶¶52–55.)

175. **Discrimination & direct regulation.** SB 627, as officially described, **singles out** "federal ... law enforcement, including **ICE**," and **directly** commands performance parameters. That is **both** discriminatory and direct regulation of a federal instrumentality—**double fatal** under the Supremacy Clause. (¶¶47A–47B, 171–174.)

176. **Federal-officer protection doctrines.** Where a State attempts to penalize a federal officer for under-color federal conduct, federal law supplies **removal** and **immunity** doctrines (e.g., 28 U.S.C. § 1442; *Tennessee v. Davis*; *Mesa*; *Neagle*). SB 627 flips the board by **pre-authorizing** penalties against **on-duty** agents—precisely what intergovernmental-immunity forbids. (¶¶54–55.)

177. **Necessary-and-Proper reserve.** Article I § 8 cl. 18 assigns to **Congress** authority to "**make all Laws ... for carrying into Execution**" powers vested in any federal **Department** or **Officer**. Regulation of **federal agents' attire/identification while performing federal tasks** is within Congress's **Necessary-and-Proper** domain, not a State's. (¶¶135–136.)

178. **Requested orders (SB 627).**
(a) Declare SB 627 **unconstitutional and preempted as applied** to federal officers and those acting under federal direction;
(b) Enjoin any **investigation, citation, civil, or administrative** enforcement against federal officers/contract agents for **on-duty** conduct;
(c) Clarify that nothing enjoins California's regulation of its **own** officers consistent with federal law. (Counts I, III, XIV; ¶¶143–145.)

179. **No concurrent jurisdiction premise.** Intergovernmental-immunity analysis presumes **no** concurrent State authority to command the **manner** of federal execution. The field is not "shared then preempted"; it is **reserved** to the United States by **structure** and **Art. I § 8 cl. 18**. (¶¶51–55, 171–174.)

180. **Remedy posture aligns with forfeiture.** The SB 627 violation independently confirms the **method of governance**—forum bypass and federal-function seizure—that justifies **permanent** sovereign-immunity forfeiture in **courts of the United States**. (¶¶141–145.)

181. **Severability note.** If California contends SB 627 contains severable applications limited to purely **state** officers, such limits do **not** cure the structural defect **as applied** to federal officers. The injunction can be tailored accordingly.

182. **No factual invention; proof by admissions.** The **official, government-hosted** signing release (Ex. D) supplies the key facts; Plaintiff proceeds by

quotations admitted under **FRE 801(d)(2)(D)** and noticed under **FRE 201**. (¶¶88, 107–112.)

183. **Bridge to Claims.** The foregoing allegations complete the factual predicates for **Counts I–XIV** (Supremacy; Article III § 1251(a)/(b)(2); Elections Clause; Equal Footing/Comity; *Arlington Heights* purpose; Pattern & Practice; **Permanent** forfeiture; *Norton* voidness; *Young* prophylaxis; Declaratory Allocation; DOJ referral; **Bond** standing; Intergovernmental Immunity). The Claims will cite back to ¶¶154–183 and Exhibits **A–D**.

———

## XIII. A FORTIORI STRUCTURAL DOCTRINE (PLAN OF THE CONVENTION • HYATT III • LAPIDES) AND THE NECESSARY & PROPER "ALL" CAPSTONE

### Plan of the Convention — A Fortiori

184. **Structure first.** The Court's "plan-of-the-Convention" line—**Katz, PennEast, Torres**—recognizes that state immunity exists (or yields) where the federal design demands it. If immunity yields to preserve discrete federal domains like **bankruptcy, federal eminent domain**, and **war powers**, then **a fortiori** it is **forfeited** when a State **repudiates the design itself**—here, by (i) occupying Congress's national role under **Art. I § 4**; (ii) bypassing this Court's **exclusive** State-vs-State forum under **28 U.S.C. § 1251(a)**; and (iii) commanding federal officers in a field Congress alone may regulate under **Art. I § 8, cl. 18**. California's apex words and acts (Exs. A–D) announce that repudiation.

185. **From yield to forfeiture.** The **Katz/PennEast/Torres** logic preserves federal architecture by relaxing immunity at the margins. California's conduct is not at the margins: it **negates** the architecture—claiming superintendence over **Congress, this Court, the federal Executive**, and **49 States**. The same structural logic that justified immunity in **Hans–Alden–Hyatt** therefore compels **permanent (or at minimum indefinite) forfeiture** when a State burns the very predicates of that courtesy (coequal dignity, equal footing, and forum discipline).

### Hyatt III — A Fortiori

186. **If Hyatt was an "affront," this is an existential insult.** In **Franchise Tax Bd. v. Hyatt (2019)**, the Court overruled **Hall** to protect California's dignity from a **Nevada** court hearing a **private tort** against a **California agency**. That was a single plaintiff in a sister state's court. Here, California proclaims—**in its own voice**—power to **"nullify congressional gains in Texas or any State"** (Ex. A); to treat **Texas** as having "shot the first bullet ... we're responding" (Ex. B); and to occupy Congress's dormant **Elections Clause** override **"until Congress acts"** (Ex. C). That is an order-of-magnitude escalation—**millions of times greater** in its horizontal and vertical reach—than the affront Hyatt condemned.

187. **Vertical + horizontal trampling (with the text).** California's stance simultaneously tramples (a) **Art. III § 2 / § 1251(a)** (exclusive State-vs-State forum), (b) **Art. I § 4** (Congress's national standards + each State's authority over

**itself**, not over others), and (c) **Art. I § 8, cl. 18/Art. II's Take-Care** (commanding federal officers). Against that backdrop, **Hyatt's** dignity rationale flips: the **same dignity** that once expanded immunity compels its **forfeiture** when a State claims **super-sovereign** status over its peers and the federal branches.

### Lapides — A Fortiori (Forum Games vs. Forum Seizure, plus the Breyer Maxim)

188. **Lapides baseline.** In **Lapides**, a State **waived** immunity by **removing** to federal court—ordinary forum games within Article III.

189. **California's conduct dwarfs Lapides.** California didn't merely pick a forum; it **seized** Article III's **exclusive** State-vs-State lane (Prop 50/ACA 8 framing) and the State-vs-United-States lane (SB 627's command over federal officers) **by plebiscite/statute**, then told the public it would **"nullify ... in Texas or any State"** (Ex. A) and that **"they shot the first bullet ... we're responding"** (Ex. B). That is **apex forum seizure**, not forum selection—and it warrants **permanent/indefinite forfeiture** to restore forum discipline.

190. **California knows Article III when it wants it.** On **September 2, 2025**, Judge **Charles R. Breyer** (N.D. Cal.) ruled against the Trump Administration's deployment/uses of troops in Los Angeles (National Guard/Marines issues), invoking the principle that **"ignorance of the law is no excuse,"** and enjoining law-enforcement uses inconsistent with the **Posse Comitatus Act** and Title 10 constraints. Multiple primary reports confirm the decision and posture.

191. **Adoptive admission (Breyer maxim).** California officials publicly amplified that win and the **Breyer maxim** as the State's own legal posture. Having embraced Article III supremacy to protect its **own** prerogatives in **Newsom v. Trump** (N.D. Cal.), the State cannot plausibly deny Article III's compulsory fora when it seeks to **superintend** other States or to **command** federal officers. **New Hampshire v. Maine** estoppel closes the escape hatch.

### Necessary & Proper — The "ALL" Capstone (SB 627 Is Not Even a Close Call)

192. **Exclusive federal lawmaking over federal officers. Art. I § 8, cl. 18** authorizes Congress to **"make all Laws** which shall be necessary and proper for carrying into Execution ... **all other Powers** vested ... in any **Department or Officer** of the United States." The word **ALL** appears **twice**. Regulation of **federal officers'** official **attire/identification** while executing federal law is a **means** of carrying federal power into execution; it is therefore Congress's domain, **not** the States'.

193. **Intergovernmental-immunity is the tame, back-up theory—this is stronger.** Even if this were a typical intergovernmental-immunity clash (it isn't), **SB 627** would still be invalid for discriminating against and directly regulating federal operations. But here the premise of **concurrent authority fails at the threshold**: California has **no right to be in the space at all**. SB 627's official materials and bill text confirm it **targets federal officers (including ICE)** performing **official duties**—an operational command, not a neutral background

rule.

194. **Result. SB 627** is **ultra vires and void ab initio**—not merely "preempted." It invades an area where "**ALL**" lawmaking authority belongs to **Congress**, and it intrudes on the **Take Care** function of **Art. II.**

## Arlington Heights + Voluntary Cessation — The Heavy Burden California Cannot Meet (Again)

195. **Contemporaneous purpose, straight from the principals.** The **Exhibit A–D** statements are **party/agent admissions (FRE 801(d)(2))** and **purpose** evidence under **Arlington Heights**: "nullify ... in Texas or any State," "They shot the first bullet ... we're responding," "press Congress ... but until that occurs ... this measure," and SB 627's "bans federal ... including ICE." The State said the quiet part **out loud**, then acted.

196. **Heavy-burden problem.** Under **Friends of the Earth v. Laidlaw** and **City of Mesquite**, the State must make it **absolutely clear** the wrongful conduct **cannot reasonably be expected to recur**—a burden it cannot carry where (i) the **same Governor** proposed Prop 50 and signed **SB 627**; (ii) the **same supermajority Legislature** passed both; and (iii) the **same Attorney General** neither repudiated nor disclaimed, after publicly invoking the **Breyer maxim** and **separation-of-powers** rhetoric. Two apex acts in ~30 days is not a fluke; it is a **method**.

## Comparative Gravity — Why This Merits Permanent/Indefinite Forfeiture

197. **Beyond Hyatt and Lapides in every dimension.** Compared to **Hyatt**, California's conduct assaults **every** dignity predicate at once (co-equality, comity, forum discipline). Compared to **Lapides**, this is not **litigation behavior** but a **constitutional referendum** and **statewide statute** used to **seize** federal fora and **federalize** operational commands. If immunity can be expanded to protect dignity from far **lesser** affronts, it can be **withdrawn** when the affront becomes **existential**.

198. **Relief implication (no narrowing).** The structurally coherent remedy is to declare the measures **void ab initio**, enter **Ex parte Young** prophylaxis, issue **declaratory allocation** (Art. I § 4; Art. III; § 1251), and recognize **permanent (or, at minimum, indefinite) forfeiture of Eleventh Amendment immunity** in **courts of the United States**—full stop.

## Evidentiary Pins

199. **SB 627 official and bill-text confirmations** (federal officers covered; effective Jan. 1, 2026; signing message): California's own pages and bill text.

200. **Newsom v. Trump (N.D. Cal.) / Breyer ruling** (National Guard/Marines, Posse Comitatus/Title 10 limits; "ignorance of the law is no excuse"

## XIV. VOTER CONSCRIPTION," FEDERAL SUPREMACY, EXCLUSIVE SCOTUS FORUM, AND DOJ REFERRAL (NO CRIMINAL ALLEGATION; CIVIL RELIEF ONLY)

### Framing & Disclaimer

**201. Civil posture; no criminal accusation.** This is a civil action. Plaintiff **does not** allege that any voter, official, or defendant has committed a federal crime. Plaintiff seeks declaratory and injunctive relief, plus an **ancillary referral** so that the United States Department of Justice can evaluate potential federal–law exposure created by the State's **design**—not to accuse any person.

**202. The structural problem.** Because California cannot unilaterally amend its constitution without **voter ratification**, the State has—by its own framing— commandeered millions of ordinary Californians into the State's asserted occupation of powers that the U.S. Constitution **assigns elsewhere**. See Ex. A (**"nullify congressional gains in Texas or any State"**); Ex. C (**"press Congress ... But until that occurs ... this measure"**). When a State invites its electorate to **perform** or **assume** functions committed to **Congress** (Art. I § 4; Art. I § 8, cl. 18) and to the **Supreme Court** (Art. III § 2; 28 U.S.C. § 1251(a)), federal supremacy issues arise that voters themselves cannot cure at the polls.

### Why "My State Said I Could" Is No Defense to Federal Law

**203. Cooper & Raich baselines.** State authorization **cannot** displace federal constitutional and statutory command. **Cooper v. Aaron**, 358 U.S. 1 (1958), makes Supreme Court constitutional holdings **binding on state officials**; States cannot "opt out." **Gonzales v. Raich**, 545 U.S. 1 (2005), confirms that state permission for conduct (there, medical marijuana) does **not** immunize participants from **federal** prohibitions. Federal law controls within its sphere, notwithstanding contrary state policy.

**204. Applied here.** If a State proclaims that its voters may **overrule** or **substitute** for Congress (**"until Congress acts,"** Ex. C) or **nullify** other States' federal-election outcomes (Ex. A), the State's permission cannot legalize participation in any conduct that federal law reserves to **federal** actors or forbids outright. The **point is structural**: the **assertion** of national legislative/judicial power by State plebiscite collides with federal supremacy whether or not any voter intends malfeasance.

**204A. Exclusive Article III forum — not a state ballot.** The Constitution commits **"Controversies between two or more States"** to the **judicial power** of the United States (Art. III § 2), and Congress has made the Supreme Court's

jurisdiction over such controversies **exclusive. 28 U.S.C. § 1251(a)**; see also Mississippi v. Louisiana (exclusive original jurisdiction). When California frames Texas's conduct as injuring California (Ex. B; Ex. C) and then channels "resolution" through a **California ballot** rather than a **§ 1251(a)** application, it attempts to **adjudicate** an interstate controversy outside the only lawful forum.

**204B. What this means for voters.** By telling voters they may **"fight back and nullify … in Texas or any State"** (Ex. A) and that the State will act **"until Congress acts"** (Ex. C), California effectively drafts voters to **stand in for** both **Congress** and **this Court**. No state plebiscite can vest the **judicial power** to resolve a State–State controversy—only the Supreme Court sitting in **exclusive original** jurisdiction can.

**204C. Cooper's command includes forum discipline. Cooper** is not limited to merits holdings; its principle is obedience to **Supreme Court supremacy**. That supremacy necessarily includes **the Court's exclusive forum** for interstate cases. State officers (and the state electorate acting through a referendum vehicle) cannot choose a different adjudicator.

**Illustrative Federal Touchstones (for DOJ Assessment, Not Accusation)**

**205. False personation of a U.S. officer (18 U.S.C. § 912).** Section 912 criminalizes (i) **pretending** to be an officer or employee of the United States and **acting as such**, or (ii) in such pretended character, demanding/obtaining something of value. Plaintiff does **not** allege § 912 has been violated. But when a State's apex materials tell voters they may **stand in for Congress** (**"until Congress acts,"** Ex. C) or **override** national outcomes (**"nullify … in Texas or any State,"** Ex. A), the State is **blurring** the line between **private/state** action and functions reserved to **federal officers/branches**. Whether particular conduct could ever satisfy § 912's elements is for DOJ; the **risk** is invented by the State's design.

**206. Conspiracy to defraud the United States (18 U.S.C. § 371) — the structural variant.** Without alleging any facts that would meet § 371's specific elements, Plaintiff notes that **Klein-type** conspiracies cover agreements to **impair** or **obstruct** lawful federal governmental functions. California's official thesis—that its electorate will **do Congress's job** nationwide "until Congress acts" and **police/ nullify** other States' Art. I § 4 choices—invites DOJ to consider whether the State's legal architecture **presses into the zone** where federal functions are systemically impaired. Again, **no accusation**—only referral.

**207. Color-of-law channels.** Other federal provisions (e.g., **18 U.S.C. § 242** deprivations under color of law; **18 U.S.C. § 595** restrictions on official interference with elections) reflect a consistent rule: **state channels** cannot

authorize acts that **federal law** forbids or reserves to **federal** institutions. Plaintiff makes **no** criminal allegation under these or any statutes; this paragraph identifies why **federal review** is warranted when a State plebiscite purports to **exercise** federal functions.

### Why the "Voter Conscription" Design Is Uniquely Hazardous

**208. The ballot as the instrument of federal usurpation.** California's design runs through the **voters** themselves: a constitutional amendment framed (by the State's own words) to **occupy** Congress's nationwide override ("**until Congress acts**," Ex. C) and to **nullify** other States' federal-election consequences (Ex. A), followed by SB 627's command over **federal officers** (Ex. D). That **conscription** is unprecedented: ordinary citizens are deployed as the **vehicle** for the State's claimed substitution for **Congress** and **this Court**.

**208A. The forum error magnifies voter risk.** Because § 1251(a) makes the Supreme Court's jurisdiction **exclusive**, any state-led attempt to **adjudicate** a State–State controversy by **referendum** is categorically incapable of producing a lawful resolution. The more California insists that its **voters** sit in the **Supreme Court's seat**, the more it risks misleading them about the legal effect of their votes vis-à-vis **federal** power.

**209. The Confederacy analogy is illustrative, not accusatory.** Just as a Confederate soldier could not lawfully defend against federal law by saying, "**my State told me I could**," and just as a modern marijuana user cannot avoid federal prohibitions by pointing to state legalization (**Raich**), a California voter cannot rely on **state invitation** to participate in conduct that—if it were ever construed as **exercising** a federal function—belongs to federal institutions alone. This is **not** to equate anyone with unlawful actors; it is to underscore the bedrock rule: **state permission is no defense to federal law.**

**210. Institutional stakes; individual exposure.** The **structural** injury is the constitutional one (Counts I–XI). But as a matter of prudence and federal comity, the Court should recognize that the **vehicle** California has chosen—**voter ratification** of a measure the State framed as **doing Congress's job**, **adjudicating** an interstate dispute outside § 1251(a), and **policing sister States** —creates **avoidable friction** with federal criminal statutes whose interpretation belongs to DOJ.

### Heavy-Burden Reprise (Laidlaw) & the Need for Referral

**211. Recurrence is certain.** The same Governor, Legislature, and Attorney General responsible for **both** the August measure and **SB 627** remain in place; there has been **no** repudiation of the **Exhibit A–D** theories. See ¶¶ 171–172. Under

**Laidlaw** and **City of Mesquite**, voluntary cessation is no defense here; the State cannot make it **"absolutely clear"** that the behavior will not recur.

**212. Why referral is the least-intrusive federal backstop.** A **referral** imposes no sanction and makes **no** accusatory finding. It simply invites the United States to review whether the State's **design** (1) **presses** voters into zones reserved to **federal** actors (including the **Supreme Court's** exclusive **Art. III** forum), and (2) risks **misleading** voters into believing that State permission has **federal** legal effect when the Constitution and **Cooper/Raich** say otherwise.

**Prayer Cross-Reference and Specific Relief**

**213. Specific request (mirroring Count XII).** In addition to the declaratory and injunctive relief sought elsewhere, Plaintiff requests an **Order** (a) transmitting the record (including **Exhibits A–D** and any supplemental RJN materials) to the **United States Department of Justice** for assessment of federal interests and potential voter-exposure risks created by **ACA 8/Prop 50** and **SB 627**; (b) authorizing the Clerk to provide certified copies upon DOJ request; and (c) stating expressly that this Court makes **no** criminal finding and **does not** prejudge any element of any federal offense.

**214. Bottom line.** California's apex officials told voters they could **substitute** for Congress **"until Congress acts,"** **adjudicate** an interstate controversy outside the **Supreme Court's exclusive original jurisdiction**, and **nullify** other States' federal-election outcomes—and then legislated commands to **federal officers**. That structural posture is why Plaintiff seeks civil structural remedies **and** a cautious, non-accusatory **referral** so that federal authorities—not a State—decide what federal criminal law means.

———

## XV. ACA 8 / PROP 50: ELECTIONS-CLAUSE USURPATION & EXCLUSIVE SCOTUS FORUM BYPASS (WITH ARLINGTON HEIGHTS INTEGRATION)

**215. What ACA 8 / Prop 50 actually asserts (by the State's own words).** California's apex officials framed the measure as (a) **occupying Congress's dormant national role** under the second half of the Elections Clause—**"but the Congress may at any time by Law make or alter such Regulations"**—and (b) **adjudicating** an asserted **Texas-on-California injury** through a **California ballot** rather than the **Supreme Court's exclusive original** forum. See **Ex. A** (**"we're giving voters a way to fight back and nullify congressional gains in Texas or any State"**); **Ex. C** (**"We must all continue to press Congress ... But until that occurs ... this measure"**).

**216. The Elections Clause split & California's substitution.** Article I, § 4 allocates two distinct roles: (i) **"Each State shall prescribe"**—each State governs **its own** congressional election mechanics; and (ii) **"but the Congress may at any time"—only Congress** may impose **national** overrides. See **Rucho v. Common Cause**, 139 S. Ct. 2484, 2506–07 (2019) (partisan-gerrymandering claims are **political questions** absent congressional standards; national rules are for **Congress**). By stating California will act **"until [Congress] acts,"** Ex. C, the State **confesses** it is **sitting in Congress's chair.**

**217. Nationwide "nullification" is not a State's § 4 function.** Under Ex. A, California promised to let its voters **"nullify congressional gains in Texas or any State."** A State's § 4 power runs **internally**; it does **not** include **superintending** sister States. California's pledge is a claim to **national override**—the very **Congress-only** authority in the Clause's second half.

**218. Texas v. Pennsylvania forecloses interstate standing.** The Supreme Court has already rejected the notion that one State has a **judicially cognizable interest** in how another State administers its elections. **Texas v. Pennsylvania**, 592 U.S. ___ (2020) (order). California's framing (**Ex. B** and **Ex. C**) recasts Texas's internal maps as an **injury to California**, yet—rather than seek leave under **28 U.S.C. § 1251(a)**—California **self-helped** by plebiscite.

**219. Exclusive original jurisdiction cannot be plebiscited.** Article III § 2 extends the judicial power to controversies **"between two or more States."** Congress has made that original jurisdiction **exclusive** to the Supreme Court. **28 U.S.C. § 1251(a)**; see **Mississippi v. Louisiana**, 506 U.S. 73, 77–78 (1992). A **California ballot** cannot **adjudicate** a State–State controversy; **only** the Supreme Court can.

**220. Arlington Heights: contemporaneous statements & sequence.** The **30-day arc** is dispositive of purpose. **Aug. 14 (Ex. A):** "nullify ... in Texas or any State." **Aug. 21 (Ex. B):** "They shot the first bullet ... we're responding," identifying an **interstate** "assault" while **bypassing** § 1251(a). **Aug. 2025 floor (Ex. C):** "press Congress ... But until that occurs ... this measure," expressly **substituting** for **Congress**. These are **decision-maker statements** at the time of an **apex referral**—core **Arlington Heights** evidence.

**221. Equal footing and comity inverted.** By promising to **police/nullify** sister States' § 4 exercises and to **adjudicate** a Texas-on-California injury at home, California repudiates the **horizontal parity** that underwrites sovereign immunity and the Court's dignity doctrine. See **Franchise Tax Bd. v. Hyatt**, 139 S. Ct. 1485, 1496–1500 (2019); **Coyle v. Smith**, 221 U.S. 559, 567–68 (1911); **Lessee of Pollard v. Hagan**, 44 U.S. (3 How.) 212, 223–24 (1845).

**222. The "ALL 50 States" branding is structural proof.** California's own

·messaging (A/B/C) presents Prop 50 as a **nationwide** lever. **That** is not "each State shall prescribe" (internal). It is the **"but the Congress may"** half (external, national). The State's **brand** corroborates its **purpose**. ·

**223. Purcell-sensitive relief, structural core intact.** Consistent with **Purcell** concerns about **election-administration timing**, the Court can **enjoin certification/counting** or **any legal effect** of Prop 50 (if pending) **without** disrupting ordinary precinct logistics—i.e., preserve neutral administration while **preventing** California from **adjudicating** a State–State controversy by plebiscite or from **sitting in Congress's seat.** (This preserves administration; it halts **legal effect.**)

**224. Not preemption alone—structural voidness.** This is not a garden-variety **preemption** squabble. It is a **structural** violation: (i) **exclusive** Article III forum displaced, (ii) **Congress-only** role claimed, and (iii) sister-State superintendence asserted. Under **Norton v. Shelby County**, 118 U.S. 425, 442–43 (1886), acts beyond constitutional power are **void ab initio**.

**225. Evidence locks preserve judicial notice & admissions.** The Court may take **judicial notice** of the government-hosted records (FRE 201; **Daniels-Hall v. NEA**, 629 F.3d 992, 998–99 (9th Cir. 2010); **Gerritsen v. Warner Bros.**, 112 F. Supp. 3d 1011, 1033–35 (C.D. Cal. 2015)), and independently treat the same materials as **opposing-party statements** under **FRE 801(d)(2)(A)–(D)**. Plaintiff will also provide **Wayback** capture data and hash/authentication under **FRE 901/902(13)– (14)** in the RJN packet.

**226. Laidlaw's "absolutely clear" burden cannot be met.** The **same** Governor who announced the **"nullify ... in Texas or any State"** theory (Ex. A/B/C) and **signed** SB 627 (Ex. D), the **same** supermajority Legislature that referred/advanced the measures, and the **same** Attorney General who adopted separation-of-powers maxims (Sept. 2 & 17) **without repudiating** the program, all **remain**. Under **Friends of the Earth v. Laidlaw**, 528 U.S. 167, 189–90 (2000), and **City of Mesquite v. Aladdin's Castle**, 455 U.S. 283, 289 (1982), voluntary cessation cannot moot a live structural controversy.

**227. Cooper's command reaches forum & actor identity. Cooper v. Aaron**, 358 U.S. 1 (1958), binds state actors to Supreme Court constitutional holdings. That supremacy necessarily embraces **who** decides (**Supreme Court**, not a state ballot) and **which actor** holds the Elections-Clause override (**Congress**, not California).

**228. Remedy coherence with structure.** Because **expulsion** is foreclosed (**Texas v. White**, 74 U.S. (7 Wall.) 700, 725–26 (1869)), the **proportional** remedy is: (a) declare **void ab initio** the State's attempt to **occupy** Congress's role and to

**adjudicate** an interstate controversy by ballot; (b) enter **Ex parte Young** prophylaxis forbidding any recurrence; (c) issue **declaratory allocation** that (i) nationwide election standards are **Congress-only** under Art. I § 4's second half and (ii) interstate controversies belong **exclusively** in the Supreme Court under **§ 1251(a)**; and (d) recognize **permanent/indefinite forfeiture** of California's **extra-textual** sovereign immunity in **courts of the United States**, because the State has **repudiated** the very predicates (equal footing, comity, Article III supremacy) that justify it.

**229. Arlington Heights dispositive finding (Prop 50).** The **contemporaneous** statements (A/B/C), the **sequence** (referral in August, followed by SB 627 in September), and the **departures** (bypassing § 1251(a); self-help "until Congress acts") compel the purpose finding: **California intended** to **substitute** for **Congress**, to **supervise/nullify** sister States, and to **move** interstate adjudication into California's political process.

**230. The State's best possible defenses fail under its own admissions.** "We didn't mean Congress-level preemption" is foreclosed by **Ex. C ("until Congress acts")**; "we didn't superintend sister States" is foreclosed by **Ex. A ("nullify ... in Texas or any State")**; "we were only debating" is foreclosed by **Ex. B ("not just rhetoric, but action")** in connection with the **apex** act of referral.

**231. Table-stakes doctrinal anchors, not novelty.** Plaintiff seeks enforcement of settled baselines: **Rucho** (national rules are for **Congress**), **Texas v. Pennsylvania** (no State interest in sister-State election administration), **§ 1251(a)** (exclusive Supreme Court forum), **Cooper** (state obedience to Supreme Court supremacy), and **Norton** (voidness). The remedy follows the **structure**; it does not invent a cause of action out of whole cloth.

**232. Standing is personal though the injury is structural.** Under **Bond v. United States** (Bond I & II), individuals may vindicate structural protections because they **secure personal liberty**. Plaintiff is governed by a State that has **announced** Article III as **optional, twice** in ~30 days, and has **plebiscited** a role reserved to **Congress and the United States Supreme Court**—imposing a concrete present risk to Plaintiff's access to **federal** adjudication and supremacy.

**233. No narrowing of immunity relief.** Given the **apex** quality and **recurrence** certainty of the conduct, and because California's posture **destroys** the predicates of the Court's **extra-textual** sovereign-immunity doctrine (coequal dignity, equal footing, Article III supremacy), the Complaint seeks **permanent or indefinite** recognition that California lacks **extra-textual** sovereign immunity **in courts of the United States** for controversies arising from or related to this structural repudiation—**without** limiting that recognition to any single "controversy."

**234. Bottom line (Prop 50).** By its own words, California used **ACA 8 / Prop 50** to (i) **substitute** for **Congress** under the Elections Clause's second half, (ii) **adjudicate** an asserted State–State controversy **outside** the Supreme Court's **exclusive** forum, and (iii) **superintend/nullify** sister States' § 4 exercises. Under **Cooper, Rucho, Texas v. Pennsylvania, § 1251(a)**, and **Norton**, that structure is unconstitutional and **void ab initio**; the appropriate response is **declaration, injunction, declaratory allocation,** and **permanent/indefinite** forfeiture of **extra-textual** sovereign immunity to restore the constitutional geometry.

———

## XVI. STRUCTURAL SEIZURES OF ARTICLES I & III — AND A DE FACTO ARTICLE V USURPATION (WITH EXHIBIT ADMISSIONS)

**235. Overview.** California's August–September 2025 conduct does not merely "press the limits." It reassigns federal powers that the Constitution vests exclusively in Congress and in this Court, and then adjudicates an interstate "controversy" through a state ballot—amounting to a de facto amendment of the United States Constitution without Article V. See Intro (State's own framing) ("repudiated Article III... appropriated powers belonging to... Supreme Court... Congress... [and] asserted oversight over all 49 sister States' Art. I, § 4 prerogatives").

**236. Admissions posture.** These positions are not inferred; they are verbatim admissions by the State and its agents, admissible under FRE 801(d)(2) and probative of official purpose under Arlington Heights: (A) Governor's official statement (**Exhibit A**); (B) Governor's press remarks (**Exhibit B**); (C) Assembly floor statement (**Exhibit C**); (D) Senator's official signing announcement for SB 627 (**Exhibit D**).

### A. Article I § 4, cl. 1 — California substitutes itself for Congress

**237. Text (second half):** "...but the Congress may at any time by Law make or alter such Regulations...."

**238. Self-confessed substitution.** Assemblymember Lowenthal concedes Congress is the proper national actor—then declares California will exercise that federal override itself **"until Congress acts"**:

"We must all continue to press Congress to create a national system ... **But until that occurs, fair representation for Californians cannot exist without this measure."**

This is not California using its own "each State shall prescribe" authority; it is California **occupying the "but the Congress may" seat.**

**239. Express nationwide nullification claim.** The Governor's official statement promises to **"give voters a way to fight back and nullify congressional gains in Texas or any state** that tries to 'rig' its maps."

That is an assertion of **superintendence and nullification** over sister States' Elections-Clause acts—the precise province of Congress under the second half of §4.

**240. Effect.** Functionally, California reads the Elections Clause to say: **"but the Congress or the State of California may at any time..."**—a **reallocation of federal power** without Article V.

**B. Article III § 2 & 28 U.S.C. § 1251(a) — California seizes this Court's exclusive interstate forum**

**241. Text / statute.** The judicial power extends "to **Controversies between two or more States"**; Congress codifies the Supreme Court's **exclusive original jurisdiction** at § 1251(a).

**242. Interstate injury declaration.** California publicly framed Texas as injuring California: **"They shot the first bullet. They took an action in Texas and we're responding to it ... a reaction to an assault on our democracy in Texas."** (Ex. **B**);

Lowenthal reinforces: **"Texas has now shamelessly affected the national balance... If unaddressed, Texas's actions ... will disenfranchise Californians."** (Ex. C).

**243. Bypass of § 1251(a).** Having alleged a **State-v-State injury**, California did **not** seek leave here; it chose **self-help via California's ballot/ACA**. Plaintiff pleaded this precisely: "interstate controversy reserved to the Supreme Court ... California did not seek leave there, but instead self-helped."

**244. Effect.** California converts a **Supreme-Court-only** case into a **California initiative—seizing this Court's exclusive docket** and adjudicating Texas inside California's political process.

**C. Article I § 8 (Necessary & Proper; regulation of federal officers) — SB 627 asserts co-legislative power over the federal executive**

**245. Text (capstone).** Congress may **"make all Laws which shall be necessary and proper for carrying into Execution ... all other Powers vested ... in any Department or Officer of the United States."**

**246. Direct command over federal agents. Exhibit D** (official government release) states SB 627 **"bans federal and local law enforcement, including ICE, from wearing ski masks and similar extreme masks,"** and **"requires officers to display their faces … when … making arrests, conducting raids, or engaging in other official duties."**

**247. Effect.** California is **not** regulating its **own** officers; it is **dictating the manner** in which **federal officers** perform federal duties—i.e., claiming the **Necessary & Proper** authority that Article I § 8 **reserves to Congress**, and subordinating the **Article II Take-Care** function.

**D. Article V — these moves are de facto amendments without constitutional process**

**248. Article V's exclusivity.** Only **Congress** (and the States collectively) can alter the allocation of federal power. A single State may not unilaterally (i) insert itself into Art. I § 4 to act **"until Congress acts,"** (ii) **seize Art. III's § 1251(a)** forum by state ballot, or (iii) exercise **Art. I § 8** "necessary and proper" authority over federal officers.

**249. Dual-front usurpation.** California's admissions show simultaneous constitutional edits:
(a) **Elections Clause rewrite** — **"but the Congress or California may** alter such Regulations" (**Ex. C; Ex. A**).
(b) **Judicial-power rewrite** — controversies **"between two or more States"** may be resolved **by California itself** rather than **in this Court (Ex. B; Ex. C)**.
And (c) **Necessary-and-Proper rewrite** — **"Congress or California** may make laws carrying federal officers into execution" (**Ex. D**).

**250. Conclusion under Article V.** These are not ordinary preemption conflicts; they are **functional amendments** to Articles I and III (and the Supremacy/Take-Care architecture) **without Article V**. **No State** has ever claimed such unilateral amending power.

**E. Evidentiary posture — FRE 801(d)(2) admissions and Arlington Heights purpose**

**251. Exhibit A** (Governor's @CAgovernor statement) — **801(d)(2)(A)** party admission; intent to **"nullify … in Texas or any state."**

**252. Exhibit B** (Governor's press remarks) — **801(d)(2)(A)** party admission; interstate hostility: **"They shot the first bullet … in Texas and we're responding to it."**

**253. Exhibit C** (Assembly floor statement) — **801(d)(2)(D)** agent admission and **Arlington Heights** purpose: **"press Congress ... But until that occurs ... this measure,"** plus Texas **"will disenfranchise Californians."**

**254. Exhibit D** (Senator's official SB 627 release) — **801(d)(2)(D)** agent admission and purpose: **"bans federal ... including ICE ... requires officers to display their faces during official duties."**

### F. Structural consequences — Equal Footing & Sovereign-Immunity forfeiture

**255. Equal-footing collapse.** A State that asserts supervisory/nullification power over its peers (**"Texas or any state"**) **repudiates** the horizontal parity that justifies Eleventh-Amendment comity. See Intro (equal-footing discussion).

**256. Plan-of-the-Convention logic in reverse.** The same dignity reasoning that **expanded immunity** (**Hans, Alden, Hyatt**) compels the **inverse** when a State claims **superiority**: immunity is a **courtesy among equals**, not a shield for a **self-declared super-sovereign**. See Intro (sovereign-immunity as courtesy grounded in coequal dignity).

**257. Per se structural injury; void ab initio.** Acts taken **without constitutional authority** are **void (Norton)**. Here, the **assertion of power itself**—Congress's power under §4; this Court's **§ 1251(a)** forum; Congress's § 8 power over federal officers—**is the injury**, and it destroys the predicates of any claim to immunity.

**258. Relief implication.** Because the State's measures **reallocate federal powers** and **bypass this Court's exclusive forum**, the calibrated remedy is (i) **declaration** of structural violations and **voidness**; (ii) **permanent/indefinite forfeiture** of Eleventh-Amendment **extra-textual** immunity **in courts of the United States** for controversies arising from or relating to this conduct; and (iii) targeted **Ex parte Young** injunctions to bar enforcement and forum-bypass. See Intro/Prayer language.

———

## XVII. EVIDENTIARY ARCHITECTURE: PARTY ADMISSIONS, PURPOSE, AND INABILITY TO MOOT

**259. This is not argument; it is proof.** Plaintiff proceeds almost entirely by verbatim quotations of California's own officials and agents (the "Exhibits"), offered as non-hearsay party admissions under FRE 801(d)(2)(A), (C), (D) and as direct purpose/intent evidence under *Village of Arlington Heights v. Metro. Hous.*

*Dev. Corp.*, 429 U.S. 252 (1977). The Court need not infer hidden meanings; the State has said what it is doing and has acted on those statements.

**260. What the admissions say (Elections Clause – Art. I § 4 cl. 1).**
(a) Legislature (**Ex. C**). **"We must all continue to press Congress ... But until that occurs, fair representation for Californians cannot exist without this measure."** This concedes Congress is the constitutionally designated national actor and then **substitutes California for Congress** "until [Congress] acts."
(b) Governor (**Ex. A**). **"We're giving voters a way to fight back and nullify congressional gains in Texas or any State...."** This is a nationwide **nullification** claim over other States' Art. I § 4 exercises.
**Legal effect:** These are express confessions that California purports to occupy the "**but the Congress may ... make or alter**" half of the Elections Clause. That is not a State using its own "each State shall prescribe" authority; it is an assertion of **Congress's dormant power.**

**261. What the admissions say (Supreme Court's exclusive forum — Art. III § 2; 28 U.S.C. § 1251(a)).**
(a) Governor (**Ex. B**). **"They shot the first bullet. They took an action in Texas and we're responding to it ... a reaction to an assault ... in Texas."**
(b) Legislature (**Ex. C**). **"Texas ... will disenfranchise Californians if unaddressed."**
**Legal effect:** The State declares a **controversy between States** and then bypasses the Supreme Court's **exclusive original jurisdiction** by choosing **self-help** via California's ballot/constitution. That is a naked seizure of this Court's docket. See 28 U.S.C. § 1251(a).

**262. What the admissions say (Congress's Art. I § 8 / Necessary & Proper power and the federal Executive).**
(a) **SB 627 (Ex. D).** California announces it **bans federal law-enforcement officers (including ICE)** from wearing certain gear and **requires on-duty identification** in the performance of federal tasks.
**Legal effect:** California is not just regulating its own officers; it is **commanding federal officers** executing federal law—i.e., claiming the **Necessary & Proper** authority to "make ... laws ... for carrying into Execution ... powers vested ... in any Department or **Officer of the United States**." That is an assertion of **Congress's Art. I § 8** power and an intrusion on **Art. II's Take-Care** function, contrary to *McCulloch v. Maryland*, *Johnson v. Maryland*, *Tarble's Case*, and the Court's modern intergovernmental-immunity line (e.g., *United States v. Washington*, 142 S. Ct. 1976 (2022)).

**263. Arlington Heights controls how courts read these acts.** The Supreme Court instructs courts to examine contemporary **statements of decision-makers**, the **sequence of events, departures from normal channels**, and the **legislative/**

administrative history to discern governmental purpose. *Arlington Heights*, 429 U.S. at 267–68. Here, the principal decision-makers spoke contemporaneously and then **ratified their words** with apex acts (ACA/Prop 50; SB 627). Under *Arlington Heights* (and *Hunter v. Underwood*), those statements are legally operative **proof of purpose**.

264. **No "the text doesn't literally say that" defense.** Government defendants cannot sanitize purpose by pointing to sterile statutory text where their own contemporaneous statements announce the intended legal effect. *Arlington Heights* forbids that evasion. The Exhibits state plainly: (1) California will **act in Congress's place** "until Congress acts"; (2) California will **"nullify"** other States' congressional outcomes; (3) California will address a **Texas-on-California injury** itself rather than in this Court; (4) California will **command federal officers**.

265. **Rucho & Texas v. Pennsylvania foreclose California's theory.**
— *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019): partisan-gerrymandering claims are **non-justiciable; only Congress** may set national rules under Art. I § 4.
— *Texas v. Pennsylvania*, 592 U.S. ___ (2020): a State has **no judicially cognizable interest** in how another State conducts its elections.
California's admissions place it beyond both holdings: claiming powers the Court has disclaimed even for itself, and **standing** the Court has denied to all States.

266. **Hyatt III magnifies the affront.** If even a single state court sitting in tort against a sister state's agency was an **"affront to sovereign dignity,"** *Franchise Tax Bd. v. Hyatt* (2019), then a State's self-proclaimed authority to **police and nullify** the Elections-Clause acts of **"Texas or any State"** is an existential violation of the **equal dignity** that underwrites sovereign immunity. The same dignity rationale that once expanded immunity **compels its forfeiture** when a State asserts **superiority** over its peers, Congress, and this Court.

267. **Article V is the backstop California jumps.** By (i) **substituting itself for Congress** in Art. I § 4, (ii) **seizing this Court's exclusive interstate forum** under Art. III § 2 / § 1251(a), and (iii) **co-legislating for federal officers** under Art. I § 8, California has effected **de facto amendments** to the federal charter **without** the procedures of Article V. No State can alter **who holds federal power** by state statute or initiative.

268. **Laidlaw's heavy burden defeats mootness/voluntary cessation.** A defendant who ceases challenged conduct bears the **"heavy burden"** to make it **"absolutely clear"** the wrongful behavior **cannot reasonably be expected to recur.** *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189–90 (2000). California cannot meet that burden:
(a) **Two apex acts in one month** (ACA/Prop 50 on **Aug. 21, 2025**; SB 627 signed **Sept. 20, 2025**; effective **Jan. 1, 2026**) show **persistence**, not cessation.

(b) **Continuity of decision-makers:** the same **Governor** (who issued the **8/14** statement and **8/21** presser and conceived of ACA 8/Prop 50), the same **supermajority Legislature who passed said ACA with 2/3rds super majority vote to the voters for state voter ratification and wrote and passed SB 627 which was then signed by the Governor**, and the same **Attorney General** who stood silent during both acts remain in office.

(c) **No repudiation:** the State has **not disclaimed** the asserted powers. Under *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982), "reform-by-promise" from the same officials does not moot a live controversy.

**269. AG/CA DOJ structural incapacity confirms recurrence.** The Attorney General was appointed by the Governor  in 2021 (whose conduct is at issue), then elected the following year in 2022 General Elections with the advantages of incumbency in a one-party Democratic supermajority environment; his spouse is a sitting Assemblymember who holds his former seat in the Assembly and **co-author of SB 627**. None of these facts are unlawful and meant in any way to impugn the character or integrity of Attorney General Bonta; it is simply why genuine repudiation by the Attorney General of California  and or the California DOJ he sits at the head of is institutionally and structurally  implausible and why it did not occur. When the State's chief legal officer is entwined with the policy authors, *Laidlaw*'s "absolutely clear" standard **cannot be satisfied**.

**270. Result: there is nothing to debate.** Under FRE 801(d)(2)(A), (B), (C) and (D), the State's words are **admissions**; under *Arlington Heights*, they are **purpose**; under *Rucho* and *Texas v. Pennsylvania*, they are **substantively forbidden**; under *Hyatt III*, they are an existential sui generis affront to **co-equal dignity and equal footing**; under *Laidlaw/Mesquite*, they are **certain to recur**. The law therefore must treat California's claimed powers as **void ab initio**, and its **Eleventh-Amendment extra-textual immunity as permanently/indefinitely forfeited** due to their repeated structural repudiations of the foundations upon which it is based upon.

———

## XVII-A. EQUAL PROTECTION PARITY — NO ELITE CARVEOUT FROM "IGNORANCE IS NO EXCUSE

271. **Parity principle.** The Attorney General on September 2nd 2025 publicly adopted the Honorable Judge Breyer of the CA-ND maxim—**"Whether they believed that some constitutional or other exception applied does not matter; ignorance of the law is no excuse."** as the State's own rule of decision (see P6). That is not merely a slogan; **it is how the State of California  prosecutes, regulates  and adjudicates against ordinary people(including minors) everyday: by objectively mapping words and acts onto legal elements,**

without excusing violators who later claim they "didn't mean it" or "didn't know." See also United States v. Int'l Minerals, 402 U.S. 558, 563–64 (1971) (ignorance-of-law generally no defense); exceptions (e.g., Lambert; Cheek) are narrow and inapplicable.

272. No privileged class for state officials. Crediting Defendants' only plausible escape—"we did not mean our official statements and apex legislative acts to claim these powers" or "we did not understand the consequences"—would create a special immunity-by-intent for state officials that is categorically denied to ordinary Californians in both federal courts, the State of California's courts, police interrogation rooms, and by its CHP officers on the highways of the state when they pull over a motorist for being in alleged violation of the California Vehicle Codes. The Fourteenth Amendment forbids a self-favoring standard. Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886); see Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (class-of-one forbids irrationally differential treatment).

273. Arlington Heights + FRE 801(d)(2) are objective. Purpose can be proven via contemporary statements of decisionmakers (Arlington Heights), and party/adoptive admissions bind the State (FRE 801(d)(2)(A),(C),(B), (D)). Those rules do not turn on after-the-fact spin. The Governor's sovereign-voice statements, the Legislature's floor statement, and the AG's non-repudiation are exactly the kind of proof those doctrines contemplate.

274. Equal-protection squeeze. Either (a) the State accepts the objective regime it imposes on everyone else and is bound by its own official words/acts here; or (b) the State claims a leniency safe harbor—"we didn't mean it / didn't know"—in which case equal protection requires the same indulgence for every Californian who says, "I didn't understand my words/acts would be taken that way and objectively (and  almost certainly in as as inculpatory  a manner as they can at that) mapped onto the California  state laws in question" **The Constitution will not and does not tolerate a two-track system favoring the sovereign and its apex officials.**

275. No rational basis for a carveout. There is no rational—let alone compelling—basis to give greater leniency to the State's most powerful and lawyered officials, some who themselves hold JDs from some of the nation's most preeminent law schools (SB 627 principal author State Senator Scott Wiener has a JD from Harvard and one of his co author's in  Assemblymember Bonta has a JD from Yale) and the State's top lawyer, in the AG Bonta also holds a JD from Yale (and matriculated at Oxford as well) and or his department that stands second only to the US Department of Justice itself in legal resources in regards to government legal apparatuses in the whole of the United States, that is also full of legal minds who have also attended some of the top legal institutions in America, who engage in high profile constitutional lawfare on a regular basis, who had access to and or are institutional counsel and had weeks to script and clear apex statements tied to a state's most apex form of unilateral action and conduct in a state constitutional referral vote and statute. Their access to elite legal counsel and or actually being elite legal counsel themselves makes  any assertion that

leniency must be given to the State of California and its apex officials on this matter less than rational.

276. Remedial implication. The Court should (i) reject any "just rhetoric/ puffery/ignorance" defense as incompatible with equal protection and with Defendants' own Breyer-maxim adoption; (ii) apply Arlington Heights and FRE 801(d)(2) as written; and (iii) proceed on waiver-by-conduct and structural forfeiture as pled. If the Court were inclined to entertain Defendants' leniency theory, **equal protection would require the Court to say so expressly in writing and recognize that such a ruling would bind the State in all its future enforcement against ordinary Californians**—underscoring why the coherent path is to hold the State to the same objective inculpatory standard it applies to everyone else(including minors). (No separate Equal Protection count is pled; this parity canon informs evidentiary treatment and remedy.)

──────

## XVIII. CLAIMS FOR RELIEF (COUNTS)

**277. Incorporation.** Plaintiff realleges ¶¶1–276.

──────

### Count I — Supremacy Clause / Structural Ultra Vires (ACA 8/Prop 50 & SB 627)

**278.** Defendants asserted powers the Constitution vests in other sovereign actors —**Congress** (Elections Clause; Necessary & Proper), the **Supreme Court** (Art. III exclusive original jurisdiction), the **federal Executive** (Art. II Take Care), and the **49 sister States** (their own Art. I §4 prerogatives and police powers reserved to them under the 10th amendment to regulate their law enforcement).

**279.** ACA 8/Prop 50 and the accompanying apex admissions (Exs. A–D) claim national supervisory/nullification authority over other States' congressional maps and Congress's dormant override.

**280.** SB 627 (Ex. D) commands federal officers "including ICE" in the performance of federal duties—authority reserved to Congress under **Art. I §8 cl. 18** and to the Executive under **Art. II §3**.

**281.** These are not mere conflicts for ordinary preemption analysis; they are **ultra vires structural seizures**.

**282.** Result: Declare ACA 8/Prop 50 and SB 627 (as it pertains to command and regulatory control over federal and out of state law enforcement)**void ab initio** and enjoin enforcement.

──────

## Count II — Article III §2 & 28 U.S.C. §1251(a): Exclusive Original Jurisdiction Bypass (ACA 8/Prop 50)

**283.** Exhibits A–C frame a **State-v-State** controversy ("They shot the first bullet … in Texas … we're responding," "will disenfranchise Californians") while promising to "nullify" outcomes in "Texas or any State."

**284.** Such controversies lie **exclusively** in the Supreme Court's original docket; California sought **self-help** instead of leave to file.

**285.** Result: Declare that California may not adjudicate or plebiscite an interstate controversy; **ACA 8/Prop 50** is unconstitutional for bypassing §1251(a) and is **void**.

———

## Count III — Article I §4 (Both Halves): Usurpation of Congress's Dormant National Role (ACA 8/Prop 50)

**286.** The first half assigns each State power over **its own** congressional election rules; the second half assigns Congress power to "make or alter" **national** rules **at any time**.

**287.** California's admissions (Exs. A & C) concede Congress is the national actor, then substitute **California** for Congress "until Congress acts," and claim power to "nullify" other States' maps.

**288.** Result: Declare that **California cannot occupy Congress's seat** under the Elections Clause; ACA 8/Prop 50 is unconstitutional and **void**.

———

## Count IV — Horizontal Federalism (Equal Footing, Comity, Full Faith & Credit)

**289.** Claiming authority over "Texas or **any State**" repudiates coequal dignity and equal footing—the very predicates the Court protected in **Franchise Tax Bd. v. Hyatt (2019)**.

**290.** Result: Declare that California's asserted suzerainty over sister States' Art. I §4 choices is unconstitutional; enjoin any implementation messaging or enforcement premised on that claim.

———

## Count V — Arlington Heights Purpose & Admissions (Evidentiary Liability)

**291.** Exhibits **A–D** are opposing-party/agent/adoptive admissions under **FRE 801(d)(2)(A), (B), (D)** and direct purpose evidence under **Arlington Heights**

(decisionmaker statements; sequence; departures).

**292.** Purpose proven: occupy Congress's Elections-Clause role; bypass §1251(a); command federal officers; police/nullify sister States.

**293.** Result: Declaratory judgment that these admissions establish purpose supporting the structural holdings and injunctive relief pled.

———

### Count VI — Pattern & Practice of Article III Bypass; Voluntary-Cessation Bar

**294.** Two apex episodes in ~30 days (Aug.–Sept. 2025) show a **method**: treat compulsory federal fora as optional.

**295.** Same Governor, same supermajority Legislature, same Attorney General (who publicly adopted separation-of-powers maxims and did not repudiate) remain in office; no formal disclaimer exists.

**296.** Under **Laidlaw**, **City of Mesquite**, and **Already**, Defendants cannot meet the **"absolutely clear"** standard.

**297.** Result: Enter **prophylactic** injunctions (Young) to prevent recurrence.

———

### Count VII — PERMANENT / INDEFINITE Forfeiture of Extra-Textual Sovereign Immunity (Plan-of-the-Convention — A Fortiori)

**298.** Sovereign immunity beyond the Eleventh Amendment's text rests on **structure**—coequal dignity, equal footing, comity, and fidelity to Article III (Hans; Alden; Hyatt).

**299.** **Katz, PennEast, Torres** teach that immunity **yields** where the **plan of the Convention** requires federal functions to operate.

**300.** A fortiori, when a State **repudiates** that structure—seizing Congress's Art. I §4 role; bypassing §1251(a); commanding federal officers; asserting suzerainty over sister States—immunity is not merely yielding in a carve-out; it is **forfeited permanently/indefinitely** in the courts of the United States.

**301.** Result: Declare **permanent/indefinite forfeiture** of extra-textual sovereign immunity.

———

### Count VIII — Void ab initio (Norton v. Shelby County)

**302.** Acts taken without constitutional authority are **void**; the assertion of authority itself is the injury in structural cases.

**303.** Result: Declare ACA 8/Prop 50 and SB 627 **void ab initio**.

———

## Count IX — Ex parte Young Prophylaxis

**304.** Prospective injunction is needed to bar: (i) supervisory/"nullification" claims over sister States; (ii) bypass of §1251(a); (iii) direct regulation of federal officers; (iv) recurrence of forum-bypass.

**305.** Result: Enter **Young** injunctions against the Governor, AG, SOS, legislative leaders, and their successors.

———

## Count X — Declaratory Allocation (Art. I §4; Art. III; 28 U.S.C. §1251(a)–(b))

**306.** Declare: (a) State-v-State controversies belong by **leave** in the Supreme Court under §1251(a); (b) nationwide partisan-gerrymandering standards are for **Congress**, not States or federal courts absent congressional law (Rucho); (c) State–United States controversies must proceed in **Article III court** or **Congress**, not by direct commands to federal officers; (d) no other state may assert regulatory power over all of its sister States law enforcement.

———

## Count XI — Ancillary Department of Justice Referral

**307.** The record presents structural risks of federal interest (intergovernmental immunity; Necessary & Proper; Elections Clause; Article III).

**308.** Result: Refer this matter to the **U.S. Department of Justice** for evaluation and any action within federal prerogatives. *(Civil case only; Plaintiff alleges no criminal conduct.)*

———

## Count XII — Bond Standing (Structural Federalism Secures Individual Liberty)

**309.** Individuals have standing to vindicate federalism allocations that safeguard personal liberty (**Bond I & II**). The State's forum-bypass method endangers those safeguards now.

**310.** Result: Declaratory judgment confirming standing and the justiciability of pre-enforcement structural injury here.

———

## Count XIII — Intergovernmental Immunity & Necessary-and-Proper Exclusivity (SB 627)

**311.** SB 627 targets **federal** law-enforcement ("including ICE"), commanding operational conduct while on duty (Ex. D).

**312.** That violates **intergovernmental immunity** (McCulloch; Johnson; Hancock; Leslie Miller; Goodyear Atomic; Neagle; Tarble's Case) and is preempted by **Arizona/Hines**.

**313.** And even prior to preemption analysis, **Art. I §8 cl. 18** reserves **ALL** lawmaking necessary-and-proper to carry **ALL** federal departmental powers into execution **to Congress alone**; what the Constitution delegates to the **United States** is **not** reserved to the States. California therefore lacks **any** regulatory jurisdiction over federal officers' attire/identification while performing federal functions.

**314.** Result: Declare SB 627 unconstitutional and **void**; enjoin enforcement against federal officers and those acting for them.

————

## XVIV. RULE 11(b)(2) NOTICE

**315. Rule 11(b)(2) certification.** Plaintiff certifies that every legal contention herein is **warranted by existing law** or by a **non-frivolous argument** for extending, modifying, or reversing existing law, consistent with **Fed. R. Civ. P. 11(b)(2)** and authorities such as *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), and *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985).

**316. Binding-precedent foundation.** The structural remedies sought (void ab initio; Ex parte Young prophylaxis; declaratory allocation; **permanent/indefinite forfeiture of extra-textual sovereign immunity**) flow a fortiori from the Supreme Court's plan-of-the-Convention line—*Hans; Alden; Hyatt; Katz; PennEast; Torres*—and from jurisdictional/exclusivity rules in **Art. III** and **28 U.S.C. § 1251(a)**, plus the Elections Clause framework in *Rucho* and *Texas v. Pennsylvania*.

**317. Quote fidelity / cite integrity.** All quotations from government officials and government-hosted pages are reproduced verbatim from Exhibits **A–D** and are independently admissible as **opposing-party/agent/adoptive admissions** under **FRE 801(d)(2)(A), (B), (C), (D)**, and appropriate for judicial notice under **FRE 201**.

**318. Primary-law priority.** Where primary federal law is available (Constitution,

U.S. Reports, U.S. Code, Supreme Court Rules), Plaintiff relies on it; secondary sources are not relied upon for propositions where primary law controls.

**319. Proportionality of requested relief.** The relief is tailored to restore the constitutional allocation while imposing the least intrusive structural correction that can function, consistent with **Texas v. White** (Union is indestructible) and the Courts' equitable powers.

**320. No factual inflation.** Allegations are anchored in Defendants' **own** words and official acts. Plaintiff does **not** allege criminal conduct and brings a **civil** action; any US Department of Justice referral sought is ancillary and within federal discretion.

————

## XX. SUPREME COURT RULE 20 NOTICE & ALL WRITS ACT RESERVATION

**321. Notice.** Plaintiff gives notice that, if necessary to preserve the United States Supreme Court's prospective jurisdiction or to prevent irreparable mooting of issues tied to **Art. III** and **28 U.S.C. § 1251(a)**, he may seek an **extraordinary writ** under **Supreme Court Rule 20** and the **All Writs Act, 28 U.S.C. § 1651(a)**.

**322. Grounds preserved.** Grounds include: (a) protection of **the Supreme Court's exclusive original jurisdiction** over controversies "between two or more States" (§ 1251(a)); (b) maintenance of the **status quo** against actions that would defeat or impair that jurisdiction (*see* All Writs Act doctrine); and (c) preventing evasion via election timing or rapid enforcement where ordinary appellate routes would be **inadequate**.

**323. Complement, not duplication.** Any Rule 20 application, if sought, would complement—not duplicate—relief requested here, and would be tailored to protect the Supreme Court's institutional role and the federal structure at issue.

**324. Triggering conditions.** Potential triggers include certification or implementation steps under **Prop 50** that would effectuate the claimed **State-vs-State** "nullification" program, or **SB 627** enforcement against federal officers in a manner that obstructs federal execution or forum discipline before this Court can adjudicate merits.

**325. Record sufficiency.** This pleading and its Exhibits **A–D** provide a clear factual and legal record for any such extraordinary request, should it become necessary.

**326. No waiver.** This notice preserves, and does not waive, any argument or remedy available in this Court, in the Ninth Circuit, or under Supreme Court Rules.

**327. Jurisdictional respect.** The Notice recognizes that this Court is properly seized of the present civil action; the reservation is made solely to protect higher-court jurisdiction and prevent irreparable structural injury.

**328. Prayer cross-reference.** See Prayer ¶¶ sections and Preamble(P8-14) for the full set of requested declarations and injunctions designed to obviate the need for extraordinary relief.

———

**TABLE OF AUTHORITIES**

**A. Cases (Alphabetical)**

- *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)
- *Alden v. Maine*, 527 U.S. 706 (1999)
- *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592 (1982)
- *Arizona v. United States*, 567 U.S. 387 (2012)
- *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015)
- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
- *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985)
- *Bond v. United States* ("Bond I"), 564 U.S. 211 (2011)
- *Bond v. United States* ("Bond II"), 572 U.S. 844 (2014)
- *Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006)
- *Cheek v. United States*, 498 U.S. 192 (1991)
- Chisholm v. Georgia, 2 U.S. (2 Dall.) 419 (1793)
- *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)
- *College Savings Bank v. Fla. Prepaid*, 527 U.S. 666 (1999)
- *Cooper v. Aaron*, 358 U.S. 1 (1958)
- *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)
- *Coyle v. Smith*, 221 U.S. 559 (1911)
- *Daniels-Hall v. NEA*, 629 F.3d 992 (9th Cir. 2010)
- *Edelman v. Jordan*, 415 U.S. 651 (1974)
- *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985)
- *Erickson v. Pardus*, 551 U.S. 89 (2007)
- *Ex parte Young*, 209 U.S. 123 (1908)
- *Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485 (2019) ("Hyatt III")
- *Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010)
- *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167 (2000)
- *Gerritsen v. Warner Bros.*, 112 F. Supp. 3d 1011 (C.D. Cal. 2015)

- *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988)
- *Haines v. Kerner*, 404 U.S. 519 (1972)
- *Hancock v. Train*, 426 U.S. 167 (1976)
- *Hans v. Louisiana*, 134 U.S. 1 (1890)
- Healy v. Beer Institute, Inc., 491 U.S. 324 (1989)
- *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010)
- *Hines v. Davidowitz*, 312 U.S. 52 (1941)
- *Hughes v. Rowe*, 449 U.S. 5 (1980)
- *In re Neagle*, 135 U.S. 1 (1890)
- *Johnson v. City of Shelby*, 574 U.S. 10 (2014)
- *Johnson v. Maryland*, 254 U.S. 51 (1920)
- *Lambert v. California*, 355 U.S. 225 (1957)
- *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002)
- Late Corporation of the Church of Jesus Christ of Latter-Day Saints v. United States, 136 U.S. 1 (1890)
- *Lessee of Pollard v. Hagan*, 44 U.S. (3 How.) 212 (1845)
- *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803)
- *Massachusetts v. Mellon*, 262 U.S. 447 (1923)
- *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)
- *Mesa v. California*, 489 U.S. 121 (1989)
- Murphy v. Ramsey, 114 U.S. 15 (1885)
- *Mississippi v. Louisiana*, 506 U.S. 73 (1992)
- New York v. United States, 505 U.S. 144 (1992)
- *Norton v. Shelby County*, 118 U.S. 425 (1886)
- *PennEast Pipeline Co. v. New Jersey*, 594 U.S. ___ (2021)
- *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (1990)
- Printz v. United States, 521 U.S. 898 (1997)
- *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019)
- Reynolds v. United States, 98 U.S. 145 (1878)
- *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020)
- *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)
- *Tarble's Case*, 80 U.S. (13 Wall.) 397 (1872)
- *Tennessee v. Davis*, 100 U.S. 257 (1879)
- *Texas v. Pennsylvania*, 592 U.S. ___ (2020) (order)
- *Texas v. White*, 74 U.S. (7 Wall.) 700 (1869)
- *Torres v. Texas DPS*, 597 U.S. ___ (2022)
- *Va. Office for Prot. & Advocacy v. Stewart (VOPA)*, 563 U.S. 247 (2011)
- *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)
- *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)
- *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)

## B. Constitutional Provisions
- **U.S. Const. art. I, § 4, cl. 1** (Elections Clause — both halves)
- **U.S. Const. art. I, § 8, cl. 3** (Commerce Clause)
- **U.S. Const. art. I, § 8, cl. 18** (Necessary and Proper Clause — "ALL … ALL")
- **U.S. Const. art. I, § 10, cl. 3** (War/Danger clause framing)
- **U.S. Const. art. II, § 3** (Take Care Clause)
- **U.S. Const. art. III, § 2** (Judicial Power; State-vs-State)
- **U.S. Const. art. IV** (Full Faith & Credit; equal footing logic)
- **U.S. Const. art. IV, § 3, cl. 2** (Property & Territory Clause)
- **U.S. Const. art. V** (Amendment Process)
- **U.S. Const. art. VI, § 2** (Supremacy Clause)
- **Amend. X** (reservation to States or the People limited to what is **not** delegated by the Constitution to US or Sister States nor prohibited by it)
- **Amend. XI** (text; State sovereign immunity doctrine rests on structure and Plan of the Convention, beyond the text alone)
- **Amend. XIV** (equal-protection parity principles cited)

## C. Statutes, Rules, and Doctrinal Sources
- **28 U.S.C. § 1251(a)** (Supreme Court—exclusive original jurisdiction)
- **28 U.S.C. § 1251(b)(2)** (State–United States lane)
- **28 U.S.C. § 1331** (federal question)
- **28 U.S.C. §§ 2201–2202** (Declaratory Judgment Act)
- **28 U.S.C. § 1651(a)** (All Writs Act)
- **Fed. R. Civ. P. 8(e)** (liberal construction)
- **Fed. R. Civ. P. 11(b)(2)** (non-frivolous contentions)
- **Fed. R. Evid. 201** (judicial notice)
- **Fed. R. Evid. 801(d)(2)** (opposing-party/agent/adoptive admissions)
- **Supreme Court Rule 20** (Extraordinary writs)

## D. Authorities by Issue (Topical Map — Non-Limiting)
1. **Sovereign Immunity: Existence, Waiver, Forfeiture** — *Hans v. Louisiana*; *Alden v. Maine*; *Franchise Tax Bd. v. Hyatt*; *Central Va. Cmty. Coll. v. Katz*; *PennEast Pipeline Co. v. New Jersey*; *Torres v. Texas DPS*; *Edelman v. Jordan*; *Atascadero State Hosp. v. Scanlon*; *Port Auth. Trans-Hudson Corp. v. Feeney*; *College Savings Bank v. Fla. Prepaid*; *Lapides v. Bd. of Regents*; *Coyle v. Smith*; *Lessee of Pollard v. Hagan*.
   - **Chisholm v. Georgia**, 2 U.S. (2 Dall.) 419 (1793) *(Article III permitted a citizen of one State to sue another State in federal court; decision that precipitated the Eleventh Amendment and underlies Hans's "structural" response).*
2. **Article III & Supreme Court's Exclusive Original Docket** — *Mississippi*

*v. Louisiana*; *Marbury v. Madison*; *Cooper v. Aaron*; *Free Enter. Fund v. PCAOB*; *Seila Law LLC v. CFPB*; *Va. Office for Prot. & Advocacy v. Stewart (VOPA)*; *Armstrong v. Exceptional Child Ctr., Inc.*; **28 U.S.C. § 1251(a)**; **Sup. Ct. Rule 17.**

3. **Elections Clause & Interstate Standing** — *Rucho v. Common Cause*; *Texas v. Pennsylvania* (order); *Massachusetts v. Mellon*; *Alfred L. Snapp & Son v. Puerto Rico*; **U.S. Const. art. I, § 4.**

4. **Supremacy / Intergovernmental Immunity / Immigration Preemption** — *McCulloch v. Maryland*; *Johnson v. Maryland*; *Hancock v. Train*; *Leslie Miller, Inc. v. Arkansas*; *Goodyear Atomic Corp. v. Miller*; *In re Neagle*; *Tarble's Case*; *Tennessee v. Davis*; *Mesa v. California*; *Arizona v. United States*; *Hines v. Davidowitz*; **U.S. Const. art. I, § 8, cl. 18**; **U.S. Const. art. VI, § 2**; **U.S. Const. art. II, § 3.**

• *Anti-Commandeering (federal → states):* **New York v. United States**, 505 U.S. 144, 161–69 (1992); **Printz v. United States**, 521 U.S. 898, 925–35 (1997).

• *Dormant Commerce / Extraterritoriality:* **Healy v. Beer Institute**, 491 U.S. 324, 336–37 (1989).

5. **Standing & Pre-Enforcement Structural Injury** — *Bond v. United States* (Bond I & II); *MedImmune, Inc. v. Genentech, Inc.*; *Susan B. Anthony List v. Driehaus*; *Free Enter. Fund v. PCAOB*; *Seila Law LLC v. CFPB*; *(optionally also cited in the body: Clapper v. Amnesty Int'l USA; TransUnion LLC v. Ramirez).*

6. **Voluntary Cessation / Mootness** — *Friends of the Earth, Inc. v. Laidlaw*; *City of Mesquite v. Aladdin's Castle, Inc.*; *Already, LLC v. Nike, Inc..*

7. **Evidence, Admissions & Purpose** — **FRE 801(d)(2)**; *New Hampshire v. Maine*; *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*; **FRE 201**; *Daniels-Hall v. NEA*; *Gerritsen v. Warner Bros.*

8. **Remedies & Tools (Prospective/Structural)** — *Ex parte Young*; *Armstrong*; *VOPA*; *Norton v. Shelby County*; **28 U.S.C. §§ 2201–2202**; **28 U.S.C. § 1651(a)**; **Sup. Ct. Rule 20.**

9. **Horizontal Federalism (Equal Footing / Comity / Full Faith & Credit)** — *Franchise Tax Bd. v. Hyatt*; *Coyle v. Smith*; *Lessee of Pollard v. Hagan*; **U.S. Const. art. IV.**

10. **Pro Se Construction & Pleading** — *Haines v. Kerner*; *Hughes v. Rowe*; *Erickson v. Pardus*; *Johnson v. City of Shelby*; *Hebbe v. Pliler*; *Lopez v. Smith*; *Karim-Panahi v. LAPD*; *Eldridge v. Block*; *Bretz v. Kelman*; *Noll v. Carlson*; **Fed. R. Civ. P. 8(e)**; *Ashcroft v. Iqbal* (construction context).

11. **Rule 11 / Novelty & Non-Frivolous Contentions** — **Fed. R. Civ. P. 11(b)(2)**; *Cooter & Gell v. Hartmarx Corp.*; *Eastway Constr. Corp. v. City of New York.*

12. **Equal-Protection Parity / Government Can't Have a Gentler Standard** — *Yick Wo v. Hopkins*; *Vill. of Willowbrook v. Olech*; *Lambert v. California*; *Cheek v. United States* (ignorance principle context).

13. **Founding & Admission Structure (Equal Footing / Indestructible Union)** — *Texas v. White*; *Coyle v. Smith*; *Pollard v. Hagan.*

14. **Territorial Supremacy & Admission Discipline (Art. IV § 3, cl. 2)** —

*Reynolds; Murphy; Late Corporation;* see also *Texas v. White; Coyle; Lessee of Pollard.*

15. **State–United States Controversies (Forum Discipline) — 28 U.S.C. § 1251(b)(2);** *Tennessee v. Davis; Mesa v. California; In re Neagle; Tarble's Case.*

———

## XXI. LOCAL RULE & FILING COMPLIANCE (CA-ED)

**329.** This pleading uses a caption, headings, numbered paragraphs, and a clear Prayer for Relief in compliance with Fed. R. Civ. P. 8(a), 10(b), and EDCA formatting conventions. Exhibits A–D are identified, and a Request for Judicial Notice is included consistent with FRE 201 and Ninth Circuit practice (Daniels-Hall; Gerritsen).

**330.** Plaintiff will file a sealing application with memorandum and proposed order consistent with EDCA Local Rule 141 and Ninth Circuit standards (compelling reasons). Formatting mechanics for filing: double-spaced body text; page numbers and brief description in the footer on every page; caption begins on the eighth line below the identification block; exhibits tabbed/labeled if filed on paper; courtesy copies as required by chamber procedures where applicable.

## XXVII. SERVICE, VENUE, DIVISION, AND VDRP

**331.** Service will be effected under Fed. R. Civ. P. 4(j)(2) and Cal. Code Civ. Proc. § 416.50 via appropriate officers/agents for each defendant. **Venue and divisional assignment are addressed supra ¶¶ 15–17.**

**332. VDRP request; full reservation of rights (no narrowing).** Plaintiff, mindful of the institutional stakes and preferring—if possible—to resolve this controversy without compelling a merits ruling on whether a State may permanently or indefinitely forfeit its sovereign immunity and related structural prerogatives, respectfully requests referral to this Court's Voluntary Dispute Resolution Program (see L.R. 271) following resolution of any threshold motions under Rule 12(b)(1) and 12(b)(6), and **without prejudice** to Plaintiff's pending or forthcoming applications for emergency equitable relief (including TRO/PI), declaratory relief, or any other remedy. This prudential request is an efficiency measure only; it **shall not** be construed as a narrowing, waiver, abandonment, or limitation of any claim, theory, prayer for relief, or structural remedy sought herein (including waiver/ forfeiture and associated prospective relief), nor as acquiescence to abstention, mootness, voluntary-cessation arguments, or delay of time-sensitive relief. Plaintiff expressly **reserves all rights** to seek extraordinary relief for this matter in the US Supreme Court pursuant to Rule 20 and 28 U.S.C. § 1651, to pursue

expedited merits adjudication if necessary, and to obtain any and all remedies warranted by the record. Given the magnitude of Defendants' admitted structural transgressions, any consensual resolution must be **commensurate with the scale of the violation and the scale of the entity which committed it  and adequate to deter recurrence;** a VDRP referral acknowledges that reality while offering a path to avoid a far-reaching merits decision if durable, court-enforceable structural relief is achievable. **Nothing in this paragraph may be invoked by Defendants as consent, waiver, estoppel, laches, or any diminution of remedies or appellate rights.**

## XXII. RESERVATION OF RIGHTS AND FURTHER AMENDMENT

**333.** Plaintiff reserves the right to amend to conform to evidence and add parties under Fed. R. Civ. P. 15 and 21, including DOES 1–10 once identified.

## XXII. CERTIFICATION UNDER RULE 5.2 & REDACTION

**334.** Plaintiff will comply with Fed. R. Civ. P. 5.2 regarding personal identifiers in public filings and will seek leave to file under seal where appropriate.

—————

## XXIII. SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE — URL INDEX & CAPTURE STATEMENTS (FRE 201)

**335. Governing standard.** The Court may take judicial notice of the existence and content of government-hosted pages and official-actor statements available on public websites. See **Fed. R. Evid. 201; Daniels-Hall v. Nat'l Educ. Ass'n**, 629 F.3d 992, 998–99 (9th Cir. 2010) (judicial notice of public web pages for what they contain); **Gerritsen v. Warner Bros. Entm't Inc.**, 112 F. Supp. 3d 1011, 1033–35 (C.D. Cal. 2015) (same). Notice is sought for existence and content, not for the truth of any disputed political assertions.

**336. Exhibit A — Governor's official statement made explicitly in the sovereign voice and name of the State of California (Aug. 14, 2025).**
**URL: https://x.com/CAgovernor/status/1956155826936406076**
**Description:** Official @CAgovernor post announcing the response package and promising the ability to "fight back and **nullify** congressional gains in Texas or any state...."
**Notice sought:** Existence and content of the post (party admission under FRE 801(d)(2)(A)); government-official authorship; date/time stamp as reflected on the page.
**Last accessed:** October 24, 2025.

**337. Exhibit B — Governor Newsom press remarks post passage of ACA 8/ Prop 50 by the Legislature (Aug. 21, 2025).**
**URL: https://www.youtube.com/watch?v=UhQMo7Ireso**

**Description:** Publicly available recording of the Governor's August 21, 2025 remarks ("They **shot the first bullet**... we're **responding** to it... a **reaction to an assault** on our democracy in Texas.").
**Notice sought:** Existence and content of the video and its posted date; statements attributable to the Governor as party admissions under FRE 801(d)(2) (A).
**Last accessed:** October 24, 2025.

**338. Exhibit C — Assembly floor statement  by Assemblyman Lowenthal(Aug. 2025).**
**URL: https://www.youtube.com/watch?v=UhQMo7Ireso**
**Description :** Publicly available recording containing the Assembly floor statement by Assemblymember Josh Lowenthal (e.g., **"press Congress... But until that occurs...** fair representation for Californians **cannot exist without this measure,"** and framing Texas's acts as **disenfranchising Californians**).
**Notice sought:** Existence and content of the recording and its posted date; statements as agent/employee admissions under FRE 801(d)(2)(D).
**Last accessed:** October 24, 2025.
**Note:** If the Assembly clip is a separate URL, Plaintiff will lodge that URL in a short supplemental notice with identical foundations.

**339. Exhibit D — SB 627 signing announcement (Sept. 20, 2025).**
**URL: https://sd11.senate.ca.gov/news/governor-newsom-signs-senator-wieners-ban-extreme-masking-ice-other-law-enforcement**

**Description :** Official California Senate District 11 page announcing the Governor's signature of **SB 627** and describing scope/purpose, including references to **"bans federal ... law enforcement, including ICE"** and operational requirements while performing official duties.
**Notice sought:** Existence and content of the page hosted on a **.ca.gov** legislative domain; statements as party/agent admissions under FRE 801(d)(2)(D).
**Last accessed:** October 24, 2025.

**340. Archival captures / authenticity.** Plaintiff will if need be promptly file a short declaration authenticating these materials under **FRE 901** and **FRE 902(13)–(14)** (including SHA-256 hashes of PDF printouts). If available, Plaintiff will also if needed append **Internet Archive (Wayback Machine)** snapshots for each URL as belt-and-suspenders corroboration. These materials are separately admissible as non-hearsay opposing-party statements under **FRE 801(d)(2)(A), (B),(C), (D).**

**341. Scope of notice.** Judicial notice is requested for the **existence**, **dates**, and **verbatim content** displayed at the URLs above (and any materially identical archived snapshots), not for the truth of contested policy claims. See **Daniels-Hall**, 629 F.3d at 998–99; **Gerritsen**, 112 F. Supp. 3d at 1033–35.

——

## POST-EMERGENCY ADDENDUM: PARTY ADMISSIONS, FORUM SEIZURE, AND EXCLUSIVE FEDERAL POWERS

**342. Purpose and placement.** To preserve readability and because new facts materially clarify forum seizure and intent, Plaintiff appends this focused addendum (without renumbering prior sections). It consolidates verbatim admissions (Exhibits A–E), demonstrates California's selective but sophisticated Article III forum use, seizure and repudiation, and contrasts a proper **concurrent** Article III dispute (the NDCA National Guard litigation) with the **exclusive federal** powers California attempted to occupy by State self-help via **ACA 8/Prop 50** and **SB 627**.

**343. Exhibit E—verbatim admission of Supreme Court forum use.** On October 24, 2025, the Governor, speaking from the official **@CAgovernor** account, stated: **"I'm filing a brief in support of the case against Donald Trump's illegal tariffs now in front of the U.S. Supreme Court. California families and businesses shouldn't pay the price for actions that Trump never had the authority to take in the first place."** *(Ex. E).*

**344. Exhibit A—Statewide superintendence claim over sister States' Elections-Clause powers.** The Governor speaking explicitly as "California" from the @CAgovernor X account on August 14th 2025 publicly promised and explicitly declared that ACA 8/ Prop 50 was the state's way of **" giving voters a way to fight back and nullify** congressional gains **in Texas or any State that tries to rig its maps."** *(Ex. A).*

**345. Exhibit B—interstate-controversy framing.** The Governor characterized Texas as the aggressor and California as responding in kind: **"They shot the first bullet ... in Texas and we're responding ... not just rhetoric, but action."** *(Ex. B).*

**346. Exhibit C—congressional substitution admission.** On the Assembly floor, one of the measure's sponsors in Assemblyman Lowenthal acknowledged Congress as the **proper** national actor, then expressly substituted California **"until [Congress] acts"**—and asserted Texas would **"disenfranchise Californians." "We must all continue to press Congress ... But until that occurs, fair**

representation for Californians cannot exist without this measure. Texas ... will disenfranchise Californians." *(Ex. C)*.

**347. Exhibit D—command to federal and out state law enforcement officers (Necessary & Proper / Take-Care domain/Intrusion into the police powers that are reserved to each State over its own law enforcement and no one else's).** The official SB 627 release declares: **"[The bill] bans federal and local law enforcement, including ICE ... and requires officers to display their faces ... when making arrests, conducting raids, or engaging in other official duties."** *(Ex. D)*.

**348. Forum knowledge and selective invocation. Exhibit E** proves California knows precisely when and how to invoke the **Supreme Court.** California also knows how to invoke **federal district court** when its **own** prerogatives are at stake (see ¶349). Those choices foreclose any suggestion that ACA 8/Prop 50 and SB 627 were naïve missteps; they reflect **deliberate forum selection.**

**349. Proper concurrent-authority example (NDCA National Guard).** In **Newsom v. Trump** (NDCA), California challenged federal use of the California National Guard in a **concurrent** lane (shared State militia authority versus presidential authority). California properly sought adjudication in **Article III courts.** That lawful resort to federal forums underscores the contrast with the **exclusive** powers California later attempted to self-adjudicate by initiative/statute.

**350. Exclusive federal lanes California attempted to occupy by self-help and seizure.**
**(a) Elections Clause—Congress's override (Art. I §4, cl. 1, second half).** The Constitution says **"but the Congress may at any time by Law make or alter such Regulations."** California's floor statement—**"until [Congress] acts"**—confesses substitution of **Congress's** role, not invocation of the State's own "each State shall prescribe" authority. *(Ex. C; see also Ex. A's nationwide "nullify" claim.)*
**(b) Exclusive original jurisdiction for State-versus-State controversies (Art. III §2; 28 U.S.C. §1251(a)).** By declaring Texas had **"shot the first bullet"** and would **"disenfranchise Californians,"** California framed a **State-versus-State** "controversy," then routed it to a **California ballot** rather than seeking leave in the Supreme Court. *(Exs. B, C.)*
**(c) Necessary & Proper / federal-officer domain (Art. I §8, cl. 18; Art. II §3).** SB 627 **commands federal officers (ICE)** in the performance of **federal** duties—legislation reserved to **Congress** and the **President's** Take-Care authority, not to a State. *(Ex. D.)*

**351. Forum seizure explained.** When California seeks to **defend** its own sovereignty (NDCA), it honors Article III fora. When California purports to **superintend** sister States or **command** federal officers, it chooses **State** self-help

(initiative/statute). That pattern is classic **purpose evidence** under *Village of Arlington Heights* and defeats any attempt to sanitize intent by pointing to neutral statutory text.

**352. Evidentiary posture—admissions, not inferences.** The foregoing quotations are admissible **opposing-party statements** under **FRE 801(d)(2)(A), (D)**. They establish: (i) an interstate-injury frame (Exs. B, C); (ii) a nationwide superintendence claim over sister States' §4 powers (Ex. A); (iii) express **congressional-substitution** intent (Ex. C); and (iv) a direct assertion of power over **federal officers** (Ex. D). *Rucho* and *Texas v. Pennsylvania* independently foreclose the State's claimed posture in this domain.

**353. Voluntary-cessation impossibility (Laidlaw).** Two apex acts within ~30 days (**ACA 8/Prop 50** referral; **SB 627** enactment), coupled with ongoing public defense and no repudiation, make it **not "absolutely clear"** the challenged conduct will not recur. *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189–90 (2000). Mootness and "we'll behave now" defenses fail on this record.

**354. Structural exclusivity—no hidden "or California (or its voters)."** The constitutional allocations the States ratified contain no latent proviso allowing unilateral State substitution: **Congress** for national election rules (Art. I §4); **this Court** for controversies "between two or more States" (Art. III §2; §1251(a)); and **Congress/President** for carrying federal officers into execution (Art. I §8, cl. 18; Art. II §3). ACA 8/Prop 50 and SB 627 presuppose precisely such a proviso.

**355. Defenses snapshot (preempted/foreclosed).**
**(a) Legislative immunity** does not license **ultra vires** amendments to the federal allocation of powers by State initiative/statute.
**(b) Rucho / Elections Clause**: national uniformity is for **Congress**, not California; a State has no cognizable interest in another State's election administration.
**(c) Texas v. Pennsylvania**: no State standing to police a sister State's federal elections.
**\*\*(d) Intergovernmental hierarchy**: SB 627 trenches on **Art. I §8, cl. 18** and **Art. II §3**; there is no concurrent State power to command federal officers.
**\*\*(e) Laidlaw**: voluntary-cessation and "changed circumstances" fail.
**\*\*(f) Admissions**: the State's own words (Exs. A–E) foreclose contrary characterizations.

**356. Consequence for sovereign immunity (link-back).** Because California's measures assert **suzerainty** over Congress, the Supreme Court's exclusive forum, the federal Executive, and sister States, they **destroy the predicates**—coequal dignity, equal footing, and forum discipline—that justify **extra-textual** sovereign immunity. Under the same *Hans/Alden/Hyatt* structural method that expanded immunity to preserve parity, the proportional and logically compelled result is

**permanent forfeiture** of extra-textual sovereign immunity in courts of the United States.

**357. Alternative (text-only) fallback confirms jurisdiction.** If the Court were to reject structure and revert to the **bare text** of the Eleventh Amendment, that text bars only suits "by Citizens of another State" or foreign citizens/subjects. Plaintiff is a California resident and a United States citizen. On either fork—**structural forfeiture** or **textual baseline**—dismissal on sovereign-immunity grounds is unavailable.

**358. Requested implementation.** The Court should (i) declare ACA 8/Prop 50 and SB 627 **void ab initio** as functional reallocations of Articles I and III without Article V; (ii) enjoin pre-election certification/effect of Prop 50 to prevent forum bypass while avoiding *Purcell* disruption; (iii) enjoin SB 627 as applied to federal officers under intergovernmental supremacy; and (iv) hold that California's Eleventh-Amendment immunity is **permanently forfeited** in courts of the United States.

**359. Finding (addendum capstone).** By its own admissions (Exs. A–E) and apex enactments (ACA 8/Prop 50; SB 627), California has (1) substituted itself for **Congress** under Art. I §4; (2) seized the **Supreme Court's** exclusive interstate forum under Art. III §2/28 U.S.C. §1251(a); and (3) exercised **Congress's** Art. I §8, cl. 18 authority over **federal officers**—a de facto amendment of the U.S. Constitution without Article V. The measures are **void ab initio**, and California's extra-textual sovereign immunity is **permanently forfeited** in courts of the United States.

**360. Preemption of "rhetoric" defense (admissions + purpose).** The State cannot recast official pronouncements and acts as harmless slogans. Exhibits A–E are **FRE 801(d)(2)(A),(D)** admissions made on official channels, contemporaneous with apex acts (ACA 8/Prop 50 referral; SB 627 enactment etc). Under *Village of Arlington Heights*, stated aims, sequence, and contemporaneous statements are probative of purpose; here they are dispositive.

**361. No "intrastate only" safe harbor under Art. I § 4.** Exhibit C's **"until Congress acts"** concedes the **second half** of § 4 (Congress's national override), not California's own "each State shall prescribe" authority. Exhibit A's promise to **"nullify … in Texas or any State"** is an assertion of **superintendence** over sister States' § 4 powers reserved to **Congress**.

**362. Exclusive Supreme Court forum triggered by the State's framing.** By declaring a State-vs-State injury—Texas **"shot the first bullet,"** **"will disenfranchise Californians"**—California invoked **Art. III § 2 and 28 U.S.C. §**

**1251(a)**, then **bypassed** the Supreme Court and adjudicated by California ballot. That is **forum seizure**, not forum error.

**363. Standing and justiciability.** Individuals may vindicate structural constraints protecting personal liberty. *Bond v. United States* ("Bond I" and "Bond II"). Pre-enforcement structural injury is cognizable. *Free Enter. Fund v. PCAOB; Seila Law LLC v. CFPB.* This case challenges **who holds power**, not how to police partisan gerrymanders (*Rucho*), and thus presents a justiciable structural claim.

**364. Voluntary-cessation burden unmet.** Two apex acts in ~30 days, same principals, no repudiation. The State cannot make it **"absolutely clear"** the conduct won't recur. *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189–90 (2000).

**365. Legislative immunity and political-question doctrines inapplicable.** Legislative immunity is not a license to **reallocate federal powers** or to **seize** the Supreme Court's exclusive original jurisdiction. The question is the **Constitution's allocation** among Congress, the Judiciary, the Executive, and the States—not a non-justiciable partisan-gerrymandering merits dispute.

**366. SB 627—federal-officer command.** Exhibit D states SB 627 **"bans ... including ICE"** and **"requires officers to display their faces ... during official duties."** That is a command to **federal officers** exercising **federal** functions, an assertion of **Art. I § 8 cl. 18** and an intrusion on the **Art. II § 3** Take-Care duty. Intergovernmental supremacy independently condemns it.

**367. Selective but sophisticated forum use—Exhibit E confirms knowledge.** In **NDCA** (National Guard), the State honored Article III and litigated a **concurrent**-authority dispute in federal court. In Exhibit E, the Governor touts filing at the **Supreme Court**. Against that backdrop, routing a claimed State-vs-State injury to a **California ballot** reveals deliberate Article III **forum seizure**.

**368. Structural consequence reaffirmed.** Because California asserted **suzerainty** over Congress (Art. I § 4 second half), the Supreme Court's exclusive forum (Art. III § 2; § 1251(a)), the federal Executive (Art. II § 3), and sister States, it **burned the predicates**—coequal dignity, equal footing, forum discipline—that justify **extra-textual** sovereign immunity. Under the same *Hans/Alden/Hyatt* method that has adjusted immunity to preserve structure, the proportional remedy is **permanent forfeiture** of extra-textual immunity in courts of the United States.

**369. Binary stare-decisis fork (no doctrinal escape hatch).** Either (i) apply **Hans-style** structural reasoning and recognize permanent forfeiture; or (ii) disavow structure and revert to the **bare Eleventh-Amendment text**, which does **not** bar suits by a State's own citizen—so the case proceeds anyway. There is no

principled middle path that preserves 135 years of precedent yet excuses California's conduct.

**370. Alternative and independent basis—waiver by apex conduct (pre-2030).** Even apart from forfeiture, Exhibits A–C show California's **voluntary** choice to carry a **private association's** partisan interests, not any **State-qua-State** interest (California's House apportionment is unaffected until after the 2030 census). That framing is incompatible with sovereign-immunity claims under **Edelman**, **Atascadero**, and **Lapides**; at minimum, it is **waiver-by-conduct** through apex State action pending 2030.

**371. Relief pointer.** The Court should (a) declare ACA 8/Prop 50 and SB 627 **void ab initio**; (b) enjoin pre-election effect of Prop 50 to prevent Supreme-Court-forum bypass while avoiding *Purcell* disruption; (c) enjoin SB 627 as applied to federal officers; and (d) hold California's Eleventh-Amendment immunity **permanently forfeited** in courts of the United States.

**372. Closing synthesis.** The State's own words (Exs. A–E) and apex enactments supply the facts; the Constitution supplies the allocation; precedent supplies the method. On either fork—**structure** or **text**—a Rule 12 dismissal on sovereign-immunity or justiciability grounds is unavailable.

———

———

## XXIV. VERIFICATION AND SIGNATURE

I, **Ndumibama Moonga**, am the plaintiff in this action. I have read (or otherwise reviewed) the foregoing Complaint and its attachments.

**Verification under 28 U.S.C. § 1746.**
I declare under penalty of perjury that, to the best of my knowledge, information, and belief formed after reasonable inquiry, all factual statements I have submitted above are **true and correct**, and all legal contentions, claims, assertions, allegations, and or facts are made in **good-faith** reliance on controlling authority or a **non-frivolous** extension thereof consistent with **Fed. R. Civ. P. 11(b)(2)**.

Consistent with **Fed. R. Civ. P. 8(e)** ("Pleadings must be construed so as to do justice.") and the Supreme Court's pro se line (**Haines v. Kerner**, 404 U.S. 519 (1972); **Erickson v. Pardus**, 551 U.S. 89 (2007); **Johnson v. City of Shelby**, 574 U.S. 10 (2014); **Hebbe v. Pliler**, 627 F.3d 338 (9th Cir. 2010)), I respectfully request that the Court **liberally construe** this pleading and its exhibits, draw

reasonable inferences in my favor, and treat any **curable defect** in captioning, citation, or formatting as **non-jurisdictional**—granting **leave to amend** if needed so that the case may be resolved **on the merits** rather than technicalities.

Executed pursuant to 28 U.S.C. § 1746.

**END OF COMPLAINT**

**Respectfully submitted,**

**Dated:** _Nou 3rd_ **, 2025**
**/s/ N.M.**
**Ndumibama Moonga ( Plaintiff, PRO SE)**

**Notice re Pseudonymity & Sealed Identity. Plaintiff proceeds publicly as "N.M." pursuant to a concurrently filed Motion to Proceed Pseudonymously and to Seal Identity Materials under E.D. Cal. L.R. 141 and Fed. R. Civ. P. 5.2. Plaintiff's true name and complete contact information are set forth in a Sealed Identity Declaration and Sealed Service List lodged under L.R. 141. Defendants will receive those sealed materials via U.S. Marshals Service. Plaintiff respectfully requests that all parties and the Clerk refrain from disclosing Plaintiff's true name on the public docket pending further order.**

———